## WICHITA FALLS & N. W. R. CO. v. WOODMAN.

No. 5954—Opinion Filed Oct. 9, 1917.

(168 Pac. 209.)

(Syllabus by the Court.)

1. **Trial—Instructions—Uncontroverted Evidence.**

When the uncontroverted evidence showed certain facts to be true, it was not error for the court to so instruct the jury.

2. **Negligence — Instructions — Province of Jury—Contributory Negligence.**

The defense of contributory negligence is at all times a question of fact for the jury, under article 23, sec. 6, Williams' Annotated Constitution, and the court should not instruct the jury that a certain fact or circumstance or a given state of facts or circumstances do or do not constitute contributory negligence.

3. **Damages—Excessive Damages—Injury to Arm.**

Evidence examined, and verdict held not excessive.

Error from District Court, Beckham County; G. A. Brown, Judge.

Action by R. Woodman against the Wichita Falls & Northwestern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Echols & Merrill and C. C. Huff, for plaintiff in error.

Dudley B. Madden, for defendant in error.

HARDY, J. Defendant in error was a passenger on one of the trains of plaintiff in error en route from Elk City to Kempton. When the train was nearing the latter station, the defendant in error, being under the impression, as he stated, that the train had stopped for the station, jumped therefrom and was injured, and in an action to recover for said alleged injuries was awarded a verdict of $3,333.33⅓, from which this appeal is taken.

The court instructed the jury that the uncontroverted evidence showed certain facts to be true and the giving of this instruction is urged as error. Without setting out the instruction in detail, we will discuss the parts thereof that are claimed to be objectionable, the first of which is:

"That while the train was en route between Elk City and Kempton, the defendant's conductor, Mr. Hagan, directed or requested the plaintiff when the train was approaching the station of Kempton he would go to the front of said passenger coach in which he was riding, so that he could depart from its train without delay."

Upon this point plaintiff testified that when they got pretty near Kempton the con-

ductor came and told him they would stop only a short time, or slow down at Kempton, and when the engine whistled to come to the front and get ready to get off. In this he was corroborated by Mr. Smotherman, who was a traveling companion of plaintiff. The conductor testified that only two passengers were on the train for Kempton that night, and he told them when he took up their tickets to come up to the head end and he would walk on and get their baggage; that the train was a little late and he told them they could be up there and get off while he was unloading their baggage and it might save a little time. There is no conflict in the evidence upon this point.

The second matter complained of is the statement of the court that:

"The plaintiff left his seat and went to the front end of said car and upon the platform steps thereof preparatory to leaving said train without delay as soon as the train should stop at said station."

The criticism leveled at this language is that it in effect excused the plaintiff from all negligence in going to the front end of the car and upon the platform and down upon the steps, and leaving the jury to believe that he had the right to do so, and told the jury that plaintiff at no time had the intention to leave said train until it should stop. In other words, that it constituted an invasion of the province of the jury, and that the court in effect instructed the jury that plaintiff was free from contributory negligence. This criticism of the instruction is not warranted. That the facts stated were true, we think is uncontroverted. However, the court in its general instructions specifically and correctly submitted to the jury the question of whether plaintiff was guilty of contributory negligence, leaving it to the jury to say whether under all of the facts and circumstances plaintiff had exercised ordinary care and caution for his own safety.

The third objection to this instruction is that the court told the jury:

"The evidence shows that it was dark at the time defendant's train reached Kempton, and there were no station lights thereat to assist the passengers in alighting from its train."

Whether this statement by the court constituted prejudicial error depends upon the meaning to be given the word "dark" as used therein. Webster defines "dark" to mean:

"Absence of light; darkness; a place where or the time when there is little or no light; night; nightfall."

From this definition it is seen that the word "dark" does not necessarily signify that degree of darkness which enveloped the Egyptians during the time of the plague or a time when or place where there is a total absence of light, but may mean nighttime or after nightfall, or a time when or place where there is but little light. The word is frequently used in ordinary conversation in referring to that period of time after nightfall. Under the uncontroverted evidence in this case the injury occurred on the night of January 25, 1911, between 7 and 8 o'clock. The plaintiff testified that at the time of the injury it was dark, and that there were no lights. The witness Smotherman said it was not a real dark night; that one could see above the horizon; that it was dark at the ground, but that he could see the ground from the platform. The conductor testified that at the place where it was customary to stop and discharge passengers, the lights from the coaches shone upon the ground, and that he was holding a lantern in his right hand at the time. A witness by the name of Saunderman testified that he knew the car was moving because he could see it pass objects, and there was light on the ground when he went to plaintiff. There is nothing in this evidence which would contradict the statement that it was after nightfall when the train reached Kempton, and that there were no station lights thereat. On the contrary, it appears that it was in the nighttime and at a time when there was little natural light. It is not contended that there were any station lights at Kempton; the only evidence being that the lights from the coaches shone upon the ground, and that the conductor had a lantern in his hand.

In instruction No. 5 the court told the jury the burden was upon plaintiff to establish by a preponderance of the evidence that he was, because of the insufficiency of lights at said station or on the cars, unable to ascertain and determine that the train was still in motion, and believing that the train had in fact stopped to enable passengers to depart therefrom he stepped or jumped from the step of the passenger coach and was thrown upon the ground and injured and they should find for the plaintiff, unless they found he was guilty of contributory negligence. This instruction submitted to the jury the question of whether there was sufficient artificial lights at the place where the train stopped to enable plaintiff to determine whether the train was in motion at the time he was about to alight, and fairly submitted the case on the evidence offered by defendant, and construing the language complained of to refer to the time of night when the train reached the station of Kempton, which is not an unreasonable meaning to be given to the word, and which in connection with the instruc-

tions given was the meaning which would naturally be placed thereon by the jury, there was no error in giving said instruction. It is a principle of law too well settled to need citation of authority that the court should not invade the province of the jury and determine a question of fact. On the other hand, it is equally well settled that where there is no controversy as to the fact, and there is no issue in the evidence upon a certain point, it is not prejudicial error for the court to assume such undisputed fact as true.

Complaint is made of the refusal of the court to give certain instructions requested by the defendant, submitting the defense of contributory negligence. The instructions tendered were properly refused. This defense under the Constitution is a question of fact for the jury, and the court should not invade the province of the jury by instructing them that a certain fact or circumstance, or a given set of facts or circumstances, do or do not constitute contributory negligence. The court should simply define the meaning of the term "contributory negligence" as used in section 6, art. 23, Williams' Constitution, and leave it to the jury to say whether the plaintiff's negligence had or had not contributed to the injuries complained of. C., R. I. & P. R. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; Osage Coal & Mining Co. v. Sperra, 42 Okla. 726, 142 Pac. 1040; St. L. & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156, Ann. Cas. 1915C, 432; St. L. & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436. There was no prejudicial error in the instruction given, nor in refusing those requested by defendant.

It is claimed that the judgment is excessive. The verdict was for $3,333.33⅓. Plaintiff was about 60 years of age, and was a carpenter and contractor by occupation, and previous to the injury was in splendid physical condition and earning on an average of $4 per day. The evidence tended to show that his left shoulder was dislocated; that his left ear and side of his head was injured, and that for a time after the accident he had no use of his left side, being hardly able to walk; that his hands were tied in front of him, and he was unable to feed himself, unless others would cut up his food for him, and that most of the time he was compelled to stay on his feet because he could not lie down with any comfort; that he was unable to carry his arm free from a sling until some time in March following the injury; that when the bandages were removed he was still suffering considerable pain, and at the time of the trial, 23d day of September, 1913, he was physically unable to perform any work in the line of his occupation; that his arm at that time was practically useless, and when used a little became numb, and he was required to apply linaments thereto in order to get the blood to properly circulate. There is no set rule by which to determine whether damages awarded are excessive, but the amount recoverable rests always in the sound discretion of the jury, and where it does not appear that they were influenced by passion or prejudice in arriving at the amount thereof, nor that the verdict is large enough to indicate that the trial of the case has resulted in a miscarriage of justice, a verdict will not be disturbed upon the ground that it is excessive. The facts in this case are very similar to those involved in Lawton v. Hills, 53 Okla. 243, 156 Pac. 297, where a verdict for $5,000 was sustained. The plaintiff in that case was 49 years of age, and was a carpenter and stone mason by trade, able to earn from $5 to $7 per day. The injuries suffered were a dislocation of the collar bone, which was shown to be permanent, a wrist was sprained, the abductor of one finger torn loose, and the outer end of the clavicle dislocated.

Taking into consideration the nature of the injuries suffered and the probability that the injury to the shoulder and the loss of the arm are permanent, and considering the pain and suffering accompanying the injury, and which has attended the injured condition since that time, together with the loss of plaintiff's earning capacity, we cannot say that the jury were actuated by passion or prejudice, or that a miscarriage of justice has resulted.

The judgment is therefore affirmed.

All the Justices concur.