PAYNE, Director General, v. TOLER.

No. 12194—Opinion Filed Dec. 4, 1923.

Negligence — Contributory Negligence — Instructions—When Prejudicially Erroneous.

In an action for damages based on negligence, where the principal defense relied on is contributory negligence, and where the testimony is such that if the jury had determined this issue in favor of the defendant such verdict would have found reasonable support in the evidence, and in such case the trial court instructs the jury that if certain facts and circumstances are shown by the evidence, and that if plaintiff did certain things under such circumstances, such acts by the plaintiff under such circumstances would not constitute contributory negligence so as to preclude recovery, such instruction is an invasion of the province of the jury under section 6, art. 23, of the Constitution, and is prejudicially erroneous. A defendant in this character of action has the same right to a finding of the ultimate fact by the jury as has the plaintiff, and since the court is inhibited by the above constitutional provision from directing a verdict for defendant on such issue, it is likewise inhibited from grouping and segregating certain items of evidence and expressing an opinion by way of instruction as to their sufficiency or insufficiency upon that issue.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Action by F. M. Toler against John Barton Payne, Director General of Railroads, to recover damages for negligent injury. Judgment for plaintiff, and defendant brings error. Reversed.

F. M. Toler commenced this action in the district court of Pawnee county June 23, 1919, by filing his petition therein, which alleged, in substance, that on or about July 21, 1918, while driving a Ford touring car on Main street in the town of Quay, and about noon of said day, and at the crossing of said Main street and the line of railway of the Atchison, Topeka & Santa Fe Railway Company, he was struck by the engine of a freight train being operated by the defendant. As negligence proximately causing the injury of which plaintiff complained, it was alleged that said train was being run at a high and excessive rate of speed; that it was not a regular train but an extra; that there were obstructions upon the side tracks of the defendant which prevented plaintiff from seeing said freight train as he approached the railroad crossing, and that the engineer and others in charge of said engine and train failed to signal for said crossing by ringing the bell or sounding the whistle, and that by reason of said negligence plaintiff was not warned of the approach of said train until it was too late to avoid being struck thereby. Plaintiff further alleged that he was driving at a rate of speed not to exceed 12 miles per hour, and that when he first saw the approaching train it was about 150 feet north of said crossing while plaintiff was about 20 feet west of said tracks and traveling east on said Main street; that he endeavored to stop but was unable to do so and was struck by said engine; that his automobile was completely wrecked; that he was seriously injured and had to go to a hospital for treatment, and that he was kept from pursuing his usual occupation for a long period of time, and his items of damage were stated to be $530 damages to his automobile, $70 for hospital expenses, and $1,620 for loss of earnings, and he prayed for judgment in the sum of $2,999.

Defendant answered by a general denial and by a special plea of contributory negligence.

Trial was had October 25, 1920, and resulted in a verdict and judgment in favor of plaintiff for $1,150, to reverse which the defendant, after unsuccessful motion for new trial, has brought the case here by petition in error with case-made attached. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

Cottingham, Green, Hayes & McInnis and F. G. Anderson, for plaintiff in error

J. G. Schofield and T. S. Hurst, for defendant in error.

Opinion by LOGSDON, C. Defendant assigns numerous errors in his petition in error for a reversal of this case, but in the view taken by this court it is only necessary to consider those errors arising upon the instructions of the court. The instructions of the court to which specific attention is called in defendant's brief are those relating to contributory negligence and to the measure of damages. Those relating to contributory negligence are paragraphs 11 and 12 of the court's instructions and read as follows:

"11. The court instructs the jury that if they believe from the evidence that the plaintiff was, on the date of the accident, placed suddenly and unexpectedly in a dangerous position, if he was so placed, and was so placed by the failure of the defendants, their agents and servants, to give reasonable warning of the approach of the train, or by their running said train substantially at a rate of speed greater than ordinary care for the safety of others would allow, then he was not guilty of contributory negligence, if he did not adopt the best means to escape but made an error of judgment as to the best course to pursue; all that was required of him under the circumstances, if it was under such cimcumstances, he acted, being to act as a person of ordinary judgment and prudence would have done, if placed in the same situation.

"12. The court instructs the jury that if you find from the evidence that plaintiff looked and listened before driving upon the track and that the view was so obstructed that he could not see the moving train, or become aware of its approach, that caused the injury, in time to avoid it, and that he took all the precautions of reasonably prudent persons for his own protection to avoid the dangers if any of the crossing, then you may find for the plaintiff as to the issue of contributory negligence."

In order to determine the correctness of the above instructions as applied to the facts of this case, it will be necessary to give a brief summary of plaintiff's testimony as to the immediate circumstances of the accident. An examination of the record shows that the abstract of plaintiff's testimony contained in the brief of defendant is substantially a correct summary of his testimony and covers all of the material facts to which he testified. That portion material to this inquiry is as follows:

"That he was at the time of the trial 70 years of age; that he lived in Jennings, Pawnee county, Oklahoma; that at the time of the injury he was engaged in the jitney business and was driving a Ford car; that on the 21st day of July, 1918, he made a trip from Jennings to Quay in which he hauled three passengers from Jennings to Quay; that these passengers were discharged from his car about 11 or 12 o'clock, noon, at some point in Quay, west of defendant's track; that it was a nice clear day and he immediately started back to Jennings, traveling on Main street that crosses defendant's track as described in the petition; that it was a little down grade near the track as the street approached the crossing, but almost level. As he drove back towards the crossing he looked for trains, first looking to the south and then to the north. That he could not see to the north because the sidetracks were blocked with cars which obstructed his view; that there were two sidetracks on the west side of the main track. The first sidetrack west of the main track is known as a 'house track'; that before he got to the sidetrack farthest west, his view was obstructed to the north by a small ice house. Near the ice house was also a supply house; that he listened close for signals from any train that might be approaching said crossing; that his hearing was pretty fair. The car he was driving was only about two months old and the engine was working good. That when he got to the second sidetrack that is the house track, being the first one west of the main track and as he was crossing it, he saw the engine of the train come past the depot, approaching the crossing which was to the south of the depot; that he endeavored to stop his car by applying the brakes; that he was driving between 10 and 15 miles an hour; that he also shut off the gas; that he became a little confused and excited; that in his judgment the train was approaching at a speed of about 25 miles an hour; that it was a long and heavy freight train; that when he applied the brakes to his car, the wheels begin to skid and he thought a couple of times the car was going to stop before it got to the crossing, but it ran right up against the railing, and the front end of the engine hit him at the same time; that is, some part of the engine. He did not know just what part it was; that he was rendered unconscious, was taken to the hospital and his car was practically destroyed. There was no signal, electric or other kind, at the crossing to warn travelers of the approach of the train, and there was no flagman at the crossing. His eyesight was good and he could have seen the train had there been no obstructions. He had crossed at this place frequently, generally about 4 times a day.

"On cross-examination he testified that he had been making these frequent trips to Quay about a year. That just as the front wheels of his car got off of the track, known as the house track, he saw the cowcatcher of the engine coming past the depot on the main track; that he later stepped this distance from the center of the house track to the center of the main track along the line he was traveling and found it to be 17 steps; that he stepped on an average of 3 feet to

the step, making a distance of approximately 51 feet. He was traveling very slowly and intended to because he was watching for an obstruction of some kind and did not know what might be ahead of him. He was traveling with the view of stopping if he saw a train coming; that he was traveling slow enough, when coming to the railroad crossing, to be able to stop if a train should approach. He had no rain curtains on his car but had the top up to keep the sun off. The brakes were in good condition on the car. That since the accident he had tried stopping his car about three different times, traveling at the same rate of speed, and it took him from 16 to 18 feet to stop. That he has measured that distance particularly. That when he put on his brakes he stopped in 16 to 18 feet. That a man driving a Ford car at the rate of speed he was traveling at the time of the accident could turn the car to the right or to the left in a distance of 8 to 10 feet. He says that when he approached this crossing and after he crossed the house track had he attempted to turn his car to the left, that is, to the north, it would have thrown him closer to the train than if he continued straight ahead, but that he had a clear space to the right or the south into which he could have turned had he thought of it. That he knew all of the physical locations and conditions surrounding this crossing; that he had been driving a Ford car 7 or 8 years; that he hit the engine somewhere close to the front end but did not know just where."

The mere reading of this testimony demonstrates the fact that there was evidence in the record tending to sustain the theory of the defendant that the plaintiff was guilty of contributory negligence, and that a verdict by the jury finding such fact would have found reasonable support in the testimony. In this situation of the record it became a matter of importance that the jury should be correctly directed by the court as to what constitutes contributory negligence in this jurisdiction. After so instructing the jury the determination of whether or not the evidence showed contributory negligence was a question of fact solely for the determination of the jury under our constitutional provision. It will be observed that by paragraphs 11 and 12 of the court's instructions certain facts and circumstances were pointed out and grouped together and the jury was instructed that if it found such facts and circumstances to exist under the evidence that it should find in favor of the plaintiff upon the issue of contributory negligence. These instructions were prejudicially erroneous, as has been determined by this court in a long line of decisions construing section 6 of art. 23 of our Constitution. In the case of St. Louis & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436,

Justice Kane, in discussing contributory negligence and the duty of the court in instructing thereon, said:

"As we have said before, in this jurisdiction the question of contributory negligence is always for the jury. At most, the only function of the court is to define for the jury the meaning of the term 'contributory negligence,' as used in section 6, supra, and instruct them that it is always a question of fact for their determination. In no event is the court authorized to direct a verdict or sustain a demurrer to the evidence upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law."

In the case of Pioneer Hardware Co. v. Thompson, 49 Okla. 502, 153 Pac. 137, after quoting the above provision of the Constitution, this court used this language:

"In other words, the court has no right to tell the jury that if they believe, from the evidence, certain facts exist, such facts, as a matter of law, constitute contributory negligence, and that they should so find. But it is the duty of the court also to leave to the jury the right to draw the ultimate conclusion from the facts, if found, whether or not contributory negligence exists as a matter of fact."

In the case of Wichita Falls & N. W. R. Co. v. Woodman, 64 Okla. 326, 168 Pac. 209, Justice Hardy, having under consideration certain requested instructions, said:

"This defense under the Constitution is a question of fact for the jury, and the court should not invade the province of the jury by instructing them that a certain fact or circumstance, or a given set of facts or circumstances, do or do not constitute contributory negligence. The court should simply define the meaning of the term 'contributory negligence' as used in section 6, art. 23, Williams' Constitution, and leave it to the jury to say whether the plaintiff's negligence had or had not contributed to the injuries complained of."

In the case of St. Louis & S. F. R. Co. v. Boush, 68 Okla. 301, 174 Pac. 1036, Justice Miley, upon the same subject, said:

"The defendant, in an action predicated on negligence, has the same right as the plaintiff in all cases whatsoever, when contributory negligence is a proper defense, to have the question left to the jury as one of fact."

Paragraphs 11 and 12 of the court's instructions were in direct violation of this rule so expressly announced and so consistently adhered to by this court since statehood. It cannot be assumed that this invasion of the province of the jury by the court was harmless or that it resulted in no prejudice to the rights of the defendant before the jury. For the error of the court in

giving these instructions this case must be reversed for a new trial. As the other matters complained of by defendant may not arise upon a second trial, or if they should the circumstances under which they may be presented will not likely be the same, it is not considered necessary to extend this discussion further in order to dispose of those matters at this time.

For the reasons above stated, this case is reversed and remanded, with directions to the trial court to vacate the judgment entered herein and to grant the defendant a new trial.

By the Court: It is so ordered.