## DIXIE MOTOR COACH CORP. v. JOHNSON.

No. 21710. Opinion Filed March 8, 1932.

Leachman & Gardere and Johnson, McGill & Johnson, for plaintiff in error.

Champion, Champion & Fischl, for defendant in error.

SWINDALL, J. Action for negligence. Judgment for plaintiff. Defendant appeals. The parties will be designated as they appeared in the trial court.

The plaintiff sued for property damage and personal injuries, and loss of professional income, sustained as a result of a collision between his car and a motor bus of the defendant a few miles south of Valley View, Tex., May 27, 1929. The plaintiff's car was the rear car of three cars proceeding south, and the bus was being driven north. The pavement was narrow, the bus driver testifying that it was about 18 feet wide, but a witness who measured it testifying that it was 16 feet wide. On each side there was a gravel shoulder about four feet wide, and at the edge of the shoulder on each side of the road there was a ditch. The motor bus was 7½ feet wide in front, and eight feet in width at the rear end. The middle car was driven by a Dr. Whidden, who had turned out in an attempt to pass the front car, but on observing the bus coming towards him had turned back upon his right side of the road. He testified that he was on his side of the road when the bus passed within a foot or two of his car, and that just before or just after the impact between the plaintiff's car and the bus the rear bumper of his car was bent backward. The driver testified that he was four or five feet from Dr. Whidden's car when he passed it.

The plaintiff and his niece, who was in the car with him, both testified that when the collision occurred, the plaintiff was driving on his right side of the road. The bus driver and several witnesses for the defendant testified that the plaintiff had also turned out in an attempt to pass the two cars in front of him, and that he was driving on the left side of the center of the road when the collision occurred. There were inconsistencies in the evidence, even among witnesses for the same parties. The witnesses for the defendant told different stories as to when the bus driver pulled the bus over to throw the right wheels off of the pavement, and one witness who testified positively to many facts also testified that all the time the driver was sounding his horn, a fact which the driver did not recall, and to which none of the other witnesses testified, the driver saying that he did not think he sounded the horn, and other witnesses testifying that he did not. The driver testified he pulled off the pavement when he was about 20 feet from plaintiff's car. There were discrepancies as to where plaintiff's car was struck, there being evidence that it was struck at the front of the front fender and that the front light was damaged, and that the left side of the car was crushed from the very front to the rear on that side. There was other evidence

that the car was first struck on the front fender opposite the front hub cap. The bus seems to have been first struck back near the cowl and to have been scraped on the left side from there back. Some photographs were introduced in evidence, but the testimony given in connection with them is not clear in the record, for the points referred to were not marked on the photographs for identification. The photographs were not taken until several hours after the collision, and it was not known how many cars or busses had passed the place of the collision. There are heavy tracks clear over at the right edge of the shoulder, and the dirt appears to be thrown up where some vehicle turned back into the road. The driver identified some mark upon one photograph as the track of the plaintiff's car, and that appears opposite the spot where there are heavy tracks clear over to the right side of the shoulder, and that track is upon the plaintiff's left. But it does not appear that it could have been the track of a Ford car. It is a single track, and in addition to that it varies considerably in width, being a large spot at the south end and a broad line curving from there back toward the north, from which direction the plaintiff had driven, and it fades out running directly across the road to the west, fading out at a point where a car making it would necessarily have been pointing directly across the road and within less than the length of a short car from the ditch. It would have been impossible for the plaintiff, driving right along the road, to have made that track, if it was a tire track. He would have been obliged to stop, backed up at right angles to the road, and then have driven forward with his car pointed directly across the road.

Most of the witnesses testified that the plaintiff was about 25 or 30 feet behind Dr. Whidden's car when the bus passed Dr. Whidden's car. It is manifest that the case turned upon the relative location of the plaintiff's car and the bus at the instant of collision, and there was sufficient evidence to permit the jury to find that the collision occurred upon the plaintiff's side of the road. Both the plaintiff and his niece testified positively that the plaintiff was driving on his right side; Dr. Whidden was admittedly on his right side of the road, and he testified that the bus passed within a foot or two of him. Also, there was no evidence of any other force that would strike his rear bumper, except the bus, as the plaintiff's car was considerably behind him and was stopped by the collision.

And the width of the bus was so great and the road so narrow, that the defendant's witnesses might well be thought to be mistaken in thinking that the bus was on the right side of the road when the collision occurred. If the bus was all upon the pavement up to within 20 feet of the point of the collision, or until 20 feet away from plaintiff's car, then, even if it was at the very edge, the front end would be within six inches of the middle of the pavement, and the rear end would be right in the middle of the road, the road being 16 feet wide, and the bus 7½ feet in front and eight feet in width at the rear. A swerving in, followed by a swerving out, could have thrown the bus on the wrong side of the road, and swerving back could have turned the front end of the bus to the right so that the front end of the fender would not have been struck, and the Ford coming in a straight line on the right side of the road could have been crushed against the bus in running along its side, the front end of the bus pointing outwards, and the rear end lying to the inside, although running forward to the driver's right. If the bus passed within a foot or two of Dr. Whidden's car, it might then have been several feet in from the edge of the pavement which would put it considerably on the wrong side of the road. A count of the witnesses would favor the defendant, but there was sufficient competent evidence to justify a jury in finding for the plaintiff upon all the material issues. There was ample evidence upon the measure of damages, the car having been damaged to some extent, the plaintiff having been rendered unconscious and obliged to stay in a local hospital for several days, and being unfit for practice of his profession as a doctor for several days after his return to his home at Ardmore. His income from his profession ran from $800 to $1,000 a month.

In the argument in its brief, the defendant first argues four assignments of error, grouped together: Alleged error in overruling its demurrer to the evidence, alleged error in overruling its motion for a directed verdict, that the verdict was not supported by sufficient evidence, and that the verdict was contrary to and in disregard of the court's instructions.

(1) In a civil action triable to a jury, if there is competent evidence reasonably supporting the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or in its ruling on law questions presented during the trial,

the verdict and finding of the jury will not be disturbed on appeal. Complete Oklahoma Digest, vol. 1, Appeal and Error, par. 588, pp. 304-313; Oklahoma Civil Digest, vol. 1, Appeal and Error, par. 254, pp. 243-247.

(2) A verdict based upon conflicting evidence will not be disturbed on appeal. Complete Oklahoma Digest, vol. 1, Appeal and Error, par. 589, pp. 314-319; Oklahoma Civil Digest, vol. 1, Appeal and Error, par. 255, pp. 247-248.

(3) (4) But the defendant in its seventh, eighth, and ninth assignments of error complains of error in the giving of certain instructions, and of error in refusing to give two instructions requested by the defendant. The instruction given by the court which the defendant contends was erroneous was as follows:

"(11) You are therefore told that if you do not find that the defendant was guilty of negligence in operating its motor vehicle at and immediately prior to the time of the collision, it would be your duty to return a verdict for the defendant, or if you find that the plaintiff was guilty of contributory negligence, it will be your duty to return a verdict for the defendant."

The defendant contends that the instruction omitted one of the essential elements of actionable negligence, the existence of "an injury which is the direct result of the negligence complained of." Neither condition covered by that instruction involved proximate cause. The instruction contained a peremptory command to return a verdict for the defendant if the jury should not find it was negligent. If it was not negligent, the jury would not get to a consideration of proximate cause. There was a like command if the jury should find that the plaintiff was guilty of contributory negligence. In that event it would not be necessary to consider whether the defendant was negligent, or if so, whether such negligence operated as a proximate cause of the collision, for even so, under the instruction the jury would be required to return a verdict for the defendant upon finding contributory negligence. The instruction, so far as it relates to contributory negligence, will be hereinafter considered.

The defendant cites cases where a certain instruction purporting to authorize recovery omitted an element necessary to be found to justify recovery, and the court held that such omission was not cured by other instructions stating the necessary grounds for recovery. Those cases do not apply. This instruction set forth two situations under which it was the duty of the jury to return a verdict for the defendant. The court did not instruct the jury that otherwise they should find a verdict for the plaintiff. In another instruction it stated what was required to permit recovery and there it defined negligence, and also instructed the jury that the burden was upon the plaintiff to prove that the defendant was negligent, and positively instructed the jury that it was not sufficient to prove that the defendant was negligent, but that he must also prove that the negligence was the proximate cause of the collision. We find nothing in the instructions that would permit recovery upon an erroneous theory, and the instructions taken as a whole fairly cover the case, and they seem free from error. They certainly were not erroneous in the respect claimed, failing to instruct as to direct or proximate cause in instructing that on failure to prove the defendant to have been negligent, the jury should return a verdict for the defendant.

Instructions must be construed as a whole and construed together, and it is not necessary that any particular paragraph therein contain all the law of the case. It is sufficient if when taken together and considered as a whole they fairly present the law of the case, and there is no conflict between the different paragraphs thereof. Complete Oklahoma Digest, vol. 4, Trial, par. 163, pp. 647-648; Oklahoma Civil Digest, vol. 5, Trial, par. 22, pp. 2944-2948.

The defendant also contends that it was the duty of the trial court to define the term "contributory negligence," and that it was erroneously defined as it appears in instruction No. 10. In that instruction, after having stated that the defendant had denied that it was negligent, the court said:

"(10) You are instructed that in addition to its plea of freedom from negligence, in the manner in which he operated its motor vehicle at the time of the collision, the defendant has interposed in this case the special plea of contributory negligence, and in this connection you are instructed that after considering all the evidence before you, you find that plaintiff was guilty of negligence, which contributed to the accident, then plaintiff cannot recover, and your verdict should be for the defendant."

The court had already defined negligence as the failure to "exercise such reasonable and ordinary care as a reasonably prudent person would use or exercise under like or similar circumstances." No objection seems to be made to such definition.

On this assignment of error the defendant cites Mascho v. Hines, 91 Okla. 295, 217 P. 856, where the court said that the trial court should have told the jury in his instructions what was meant by contributory negligence, and left it to the jury to say whether the plaintiff had or had not contributed to the injury complained of. In that case the decision merely holds that the trial court went too far, for in its instructions it instructed the jury that certain facts would constitute contributory negligence as a matter of law, and the decision held that the court should have been content with defining it, leaving it to the jury to be determined by it as a matter of fact whether or not there was contributory negligence, as required by the constitutional provision that in all cases the question of contributory negligence shall be a question of fact for the jury.

Another case cited was Missouri, K. & T. Ry. Co. v. Perino, 118 Okla. 138, 247 P. 41, in which it was said that the court should define contributory negligence as used in the Constitution, and leave it to the jury to say whether plaintiff's negligence contributed to the injuries. The opinion indicates that a proper instruction was requested in that case and was refused. In the present case, the defendant requested the following instruction:

" (3)', If after considering all the evidence before you, you find that plaintiff was guilty of negligence which contributed to the accident, then plaintiff cannot recover and your verdict should be for defendant."

While the instruction appears marked "refused," the identical instruction was given as part of instruction No. 10, where the court instructed the jury that in addition to the plea of "freedom from negligence," the defendant had pleaded contributory negligence. The instruction given was the one requested, and if it did not sufficiently define "contributory negligence," the error was invited, as the defendant cannot complain of the giving of the very instruction requested by it.

It is not error to refuse to give a requested instruction which is covered by the general instructions given. Complete Oklahoma Digest, vol. 4, Trial, par. 146, pp. 639-644; Oklahoma Civil Digest, vol. 5, Trial, par. 22, pp. 2952-2955.

Further, this case presents no problem of intervening cause, and we cannot see anything in the facts that would require distinguishing between mere contributory negligence and proximate contributory negligence, but the defendant seems to think that the instructions to return a verdict for it upon proof of contributory negligence should have covered the matter of proximate cause. If so, then the error was favorable to the defendant in not requiring as a condition of the contributory negligence being a defense that it be negligence proximately contributing. The defendant cannot complain of favorable error.

The defendant also contends that the verdict was the result of passion and prejudice encouraged by the court in its improper remarks to witnesses and others in the presence of the jury. On that point it says and quotes as follows:

"While Wiley Barnes, the driver of the plaintiff in error's bus, was on the witness stand and while he was being cross-examined by the attorneys for defendant in error in regard to the width of the road, the court asked this question: (C.-M. 135) 'How wide is **that** bus?' (Emphasis ours.)

"Again, while attorneys for defendant in error continued their cross-examination, the driver had been asked if he blew his horn, to which he replied, 'I don't think I blew it.' The court then asked the following questions (C.-M. 137):

" 'By the Court: Did you blow it? A. No, sir. Q. This man who said you blew it then was mistaken? A. He might have been.'

"Again, on page 140, while being questioned in regard to plaintiff in error's exhibits 1 to 6 inclusive:

" 'By the Court: You take him down there? A. The man to take them; yes, sir. Q. Where did you find him? A. Out of Dallas.'

"On page 143 of the case-made, while this same witness was testifying why he failed to obtain the name of one of the witnesses, the court said:

" 'By the Court: When did you say he saw it? A. Out there. Q. Tell you that out there? A. He said he saw the accident. Q. And you did not take his name? A. They sent me up there to get his name; I did not take it. By the Court: All right, that is all.'

"While we are unable to show to this court the emphasis and tone of voice in which these questions were asked, even in print it is easily seen that the trial court endeavored, and did influence the jury against plaintiff in error and its witnesses and prevented it from having the fair and impartial trial guaranteed to it by our Constitution."

We see nothing in the remarks of the court that amounted to more than bringing

244

out evidence relevant to the issue. There was nothing improper in bringing out information as to the width of the bus, nor in calling the attention of the driver to the fact that witnesses had testified that he had blown the horn, to ascertain, if possible, which witness was in error. Neither do we see anything improper in the question asked about where the photographer was obtained to take the photographs, or in bringing out the fact that the witness did not take the name of a person who had informed him that he had seen the collision. We have read the entire record in connection with these specifications, and we have been unable to find anything indicating an untoward attitude of the trial judge, and a reading of the instructions clearly indicates that there was no such attitude. The court was very emphatic in instructing the jury that the burden of proof was upon the plaintiff, and in its other instructions it did not merely state that upon the proof of certain elements the plaintiff would be entitled to recover, but in one place the court emphatically said it was "not enough to entitle the plaintiff to recover to merely show that he was injured and that the injury was the result of a collision with a bus belonging to the defendant corporation," then going on to require the plaintiff to prove the negligence, and that it was the proximate cause of the collision. Further, the court, in effect, eliminated an issue of speed alone as a ground of liability, by defining the rule of the road as requiring a driver to keep to the right of the center of the road, and in another place the court laid it down as an element that the plaintiff be upon his own side of the road, and that he be not guilty of contributory negligence, practically at that place putting upon the plaintiff the burden of showing freedom from contributory negligence. Such instructions were not the instructions of a prejudiced court, for a prejudiced court would merely have stated only the elements necessary to be proved to permit recovery, and would not have emphatically stated proof of certain things would be insufficient.

Judgment affirmed.

LESTER, C. J., and CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.

Note.—See under (2), 2 R. C. L. 194; R. C. L. Perm. Supp. p. 368; R. C. L. Pocket Part, title Appeal, § 167. (3), 14 R. C. L. 817 et seq.; R. C. L. Perm. Supp. p. 3683; R. C. L. Pocket Part, title Instructions, § 76. (4), 14 R. C. L. 752; R. C. L. Perm. Supp. p. 3659; R. C. L. Pocket Part, title Instructions, § 22.