## SOUTHWESTERN COTTON OIL CO. et al. v. FUSTON.

No. 23883.  June 11, 1935.

Rehearing Denied July 9, 1935.

Abernathy & Howell, for plaintiffs in error.

Ames, Cochran, Ames & Monnet, for defendant in error.

PER CURIAM. The defendant in error, H. B. Fuston, brought this action against W. H. Davis and the Southwestern Cotton Oil Company for damages in the sum of $15,400 for personal injury growing out of an automobile accident which occurred on U. S. Highway No. 77 about 25 miles south of Oklahoma City on the 27th day of May, 1929. The defendants answered by way of a general denial and with a further plea of contributory negligence. The parties will be hereafter referred to. as they appeared in the court below.

The evidence offered on behalf of the plaintiff at the trial showed that at the time of the accident he was a physician living at Bokchito, Okla.; that on said date he and another physician, Dr. R. E. Sawyer, who lived at Durant, were on their way to attend a meeting of the State Medical

Association at Oklahoma City; that they were driving along the highway at a speed of about 40 miles an hour, and were about to meet a car coming in the opposite direction from the north, when the defendant W. H. Davis came around plaintiff's automobile from behind and attempted to pass; that with this situation, and in the effort to avoid a collision with the car coming from the front, Davis cut across to the right before he was entirely clear of Fuston's car and hooked his rear bumper with the front fender or bumper of the Fuston car, throwing the plaintiff's car into the ditch and causing both him and his car serious injury. Dr. Fuston was driving a Ford and the defendant Davis was driving an Oakland car at the time of the accident.

The one disinterested witness who was in the best position to testify as to the collision and its cause was Byron Roberts, who was a deputy in the office of the court clerk of Oklahoma county, and who testified that he was the driver of the car coming from the north and meeting the Davis and Fuston cars at the time of the accident.

Roberts testified as follows:

"Q. In driving your car towards the south at that particular time, what did you do? A. I slowed up as quick as I could without skidding the wheels. Q. On what part of the highway were you driving? A. On the right hand side going south. Q. State what happened before the car which was attempting to pass the Ford coupe had entirely passed that car? A. Well, the Oakland drew up on even terms with the Ford and a little bit in front of it so that the rear of the Oakland was just, you might say, even with the front of the Ford, and then cut over. Q. At the time the Oakland was in that position and at the time you say it cut over, had the rear of the Oakland entirely cleared the front of the Ford? A. No, sir. Q. When you state that the Oakland cut over, just explain in which direction it cut over? A. It was traveling north and turned to the right. Q. Then state what happened? A. Well, by that time my car had almost reached their two. The Oakland went on up the road. We all three passed almost in a bunch, and the Oakland went on off up the road and the Ford angled off into a ditch and ran up the ditch a ways and came to a stop. * * * Q. From the position you were in, could you see whether any part of the Oakland was locked with any part of the Ford coupe just before the Ford coupe went into the ditch? A. No, sir; the Oakland obstructed my view of the front of the Ford itself. Q. When the Oakland pulled around the front of the Ford as you have stated, was there

sufficient room for the Ford to proceed towards the north without coming in contact with the Oakland or being forced into the ditch? A. At the angle that the Oakland cut in in front of the Ford, I don't think it was possible to avoid striking the front end of the Ford. * * * Q. State what position the Ford was in as the driver was going north on the paving prior to the time of the accident, as to the center of the highway A. Well, he seemed to be just about on his side of the road; maybe a foot or two from the curbing."

The testimony of the defendant and his witnesses was a categorical contradiction of plaintiff's showing; that at the time of the accident no car was coming from the north or front; that defendant did not cross over to the right side of the road until he was entirely clear of the Fuston car; that his car did not touch the Fuston car nor crowd it off into the ditch; that plaintiff simply ran his car off into the ditch and caused his own injury without any fault or negligence on the part of the defendant Davis. It is admitted, however, that at the time of the accident, Davis was traveling on the business of the Southwestern Cotton Oil Company, and that in the event Davis is liable his company is also liable.

The jury returned a verdict in favor of the plaintiff and fixed his damages in the sum of $1,500, and the defendants have appealed to this court.

Criticism is made of the trial court in making the remark hereafter quoted in connection with the testimony of one E. J. Sullivan. This witness had been subpoenaed by the defendants, but was called by the plaintiff. Upon cross-examination, the first question asked by counsel for defendant was

"Q. Mr. Sullivan, are you here as a witness for the plaintiff or for the defendants?"

—and, upon objection by the attorney for the plaintiff, the court made the following observation:

"It is unfair to assume against any one, because someone had a man subpoenaed, that he is that man's witness."

It is not clear upon what theory counsel indulge their criticism of the trial court in making this statement. The defendants had no vested right in this witness merely because they had caused him to be brought to court. The plaintiff had the right to call the witness for whatever he might desire to prove by him. It cannot be said that the observation by the court did not

correctly state the law, and if it meant anything at all, it was merely defensive for the witness or plaintiff's counsel as against an implication which ought not to have been made by the asking of the question in the first place.

Defendants complain that the court refused to give their requested instructions Nos. 5 and 7. These two instructions attempted to set out certain specific and given states of facts as contributory negligence and would have told the jury that if they found these facts to be true, then their verdict should be for the defendants. In the case of St. L. & S. F. Ry. Co. v. Eakins, 141 Okla. 256, 284 P. 866, this court said:

"The requested instruction in effect would have advised the jury that, if they believed and found a certain state of facts, then the deceased would have been guilty of negligence, either primary or contributory, and the plaintiff by reason thereof could not recover, although the railway company also be guilty of negligence. Under the ruling and authorities of the last above-quoted cases, such instruction would have been an invasion of the province of the jury and was unwarranted under the particular evidence."

In the case of Wichita Falls & N. W. R. Co. v. Woodman, 64 Okla. 326, 168 P. 209, this court said:

"The court should not invade the province of the jury by instructing them that a certain fact or circumstance, or a given set of facts or circumstances, do or do not constitute contributory negligence. The court should simply define the meaning of the term 'contributory negligence' as used in section 6, art. 23, Williams' Constitution and leave it to the jury to say whether the plaintiff's negligence had or had not contributed to the injuries complained of."

The holding above has been so often repeated in only slightly differing language that it is the settled law of the state. It is a waste of time to even discuss it further. The requested instructions of the defendant would have been error if given.

The trial court's instruction No. 4 on contributory negligence (and which is complained of by defendants) has been held by this court in Dixie Motor Coach Corporation v. Johnson, 155 Okla. 240, 9 P. (2d) 5, as being even too favorable to defendants. No error can be predicated on the refusal or giving of these instructions on contributory negligence.

The court gave its instruction No. 7, as follows:

"You are instructed that where a person is placed suddenly in a position of peril without sufficient time to consider all the circumstances, the law does not require of him the same degree of care and caution as it requires of a person who has ample opportunity for the full exercise of his judgment and reasoning faculties."

This instruction is taken in haec verba from section 229 of Sixth Edition of Berry on Automobiles, and correctly states the law so far as it goes. Standing by itself and without further limitation, this instruction is subject to criticism. The rule has been better stated in Oklahoma Producing & Refining Corp. v. Freeman, 88 Okla. 166, 212 P. 742. See, also, Noble v. Sears (Ore.) 257 P. 809, and Leslie v. Catanzaro (Pa.) 116 Atl. 504. The instruction was only abstract, and the statement of the rule at all was not important but only incidental, and in this case we cannot reverse on this ground. In the case of Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 P. 678, this court said:

"Whether, in a given case, there should be a reversal for error in giving an instruction depends quite as much upon the evidence before the jury to which the instruction might be applied as upon the abstract accuracy of the language of the instruction, and so, if it is apparent that the language of the instruction, though inaccurate, yet, when applied to the evidence before the jury, it could not have misled the jury to believe their duty was different from what it actually was, the inaccuracy can afford no reason for reversal."

See, also, Barnsdall National Bank v. Dykes, 136 Okla. 226, 277 P. 219, and Cushing Refining & Gasoline Co. v. Deshan, 149 Okla. 225, 300 P. 312.

Complaint is further made by defendants of the measure of damage instruction in that the recovery for car damage was not properly limited by the court. However, construing that instruction with instruction No. 1, the jury was properly advised as to what was in issue in this respect.

The issue of fact before the jury was simple—that is, Did or did not the defendant Davis at the time of the accident in question cut over in front of Fuston before he was entirely clear of his car, and either hook his car or crowd him into the ditch in an effort to avoid a collision?

The plaintiff's car was so badly damaged that the cost of repair was over $140; the plaintiff had two ribs broken, suffered cuts and bruises to his body which were at least

very painful; and there was substantial medical testimony from the physician who attended him that he has suffered material permanent injury from a haemorrhage on the brain caused by his head striking the body of his car in taking the ditch. The evidence offered on behalf of the defendants afforded no reasonable explanation as to why plaintiff ran his car into the ditch: the weight of the evidence and the only rational explanation of the accident would place the blame entirely upon Davis in his manner of passing plaintiff's car.

The judgment is affirmed.

The Supreme Court acknowledges the aid of District Judge E. A. Summers in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, upon consideration, this opinion, as modified, was adopted by the court.

McNEILL, C. J., and RILEY, WELCH, PHELPS, and GIBSON, JJ., concur.