Cloyse KENTY, Executrix of the Estate of Robert B. Kenty, Plaintiff in Error,

v.

SPARTAN AIRCRAFT COMPANY, a Corporation, and Geraldine Powell, Defendants in Error.

No. 36108.

Supreme Court of Oklahoma.

Oct. 12, 1954.

Rehearing Denied Nov. 16, 1954.

Houston, Klein, Melone & Davidson and Henry Kolbus, Tulsa, for plaintiff in error.

Truman B. Rucker, Bryan W. Tabor, Gurney G. Cox and Joseph A. Sharp, Tulsa, for defendants in error.

WILLIAMS, Justice.

This action was instituted by Robert B. Kenty, plaintiff, during his lifetime, against Spartan Aircraft Company and Geraldine Powell, defendants, to recover damages for personal injuries sustained in an airplane crash which occurred on December 22, 1949. A jury trial was had upon the issues joined, resulting in a unanimous verdict

in favor of defendants. Motion for new trial was overruled and plaintiff appeals.

Subsequent to the trial plaintiff was killed in another plane crash, and the cause has been revived in the name of Cloyse Kenty, executrix of the estate of Robert B. Kenty.

The only proposition urged by plaintiff in this appeal is error on the part of the trial court in refusing to give certain instructions requested by plaintiff. No objection was made to the instructions given by the court and no complaint concerning their correctness is made here. Plaintiff contends that the refusal to give the instructions requested by him deprived him of having his theory of the case presented to the jury.

The factual situation involved is substantially as follows:

Robert B. Kenty lived at Dallas, Texas, and was branch manager of Air Associates, Inc. He was a licensed airplane pilot and on December 22, 1949, arranged to fly to Tulsa, Oklahoma in a Swift single-engine airplane owned by his employer. Kenty was accompanied on the trip by another employee, a Mr. Frick, who was also a licensed pilot but generally flew other types of planes. The plane seated two persons who sat side by side and was piloted from Dallas to Tulsa by Kenty. The gas tank of the plane held twenty-seven and a half gallons of gasoline and the plane used about nine gallons per hour in flight. It took a little over two hours to fly to Tulsa, where Kenty landed and taxied the plane to Spartan Hangar No. 2. After parking near Hangar No. 2, Kenty and Frick alighted from the plane, entered Hangar No. 2 and crossed to the office. Kenty testified that he and Frick had agreed that Frick would fly the plane back to Dallas and that he instructed Frick to take care of servicing the plane at Tulsa. Frick requested such service from the defendant Powell who was employed by the defendant Spartan Aircraft Company at the time. There is some controversy about the exact nature of the conversation wherein the service was requested. Plaintiff testified that Frick requested the defendant Powell to service the "Swift parked outside" and that

he, Kenty, added, "Air Associates Swift parked outside here." The defendant Powell testified that Kenty requested the service for the plane and stated that it was parked at Hangar No. 1 and that it was a Swift. It was undisputed, however, that the NC number of the plane was neither asked for nor given in connection with the request for service. The NC number is a number assigned to each airplane for the purpose of registration and identification which is prominently displayed on the airplane and carried by it so long as it continues to exist as an airplane. After requesting servicing of the plane Kenty and Frick went to the purchasing department of the defendant company to transact business for which they had come.

The defendant Powell then instructed one Oscar Mack, an employee of the defendant company, to service a Swift plane parked at Hangar No. 1 and to get the NC number of the plane and bring it to her along with the amount of gasoline and oil used in servicing the plane. Mack then went to Hangar No. 1 where he found a Swift plane at the east end and inside of said hangar, which he proceeded to service with gas and oil. This, of course, was not the plane in which Kenty and Frick had arrived. After servicing the plane, Mack gave the NC number of the plane he had serviced to the defendant, Powell, together with information as to the amount of gasoline and oil used. The defendant Powell then made out a service ticket showing the NC number of the plane serviced, the amount of gasoline and oil furnished, and that the service was charged to Air Associates, Inc.

About 2:30 p. m. on the same day, Kenty and Frick returned to the hangar, where Kenty went to the men's room Frick went direct to the office. Kenty then went to the office where he heard Frick protesting or commenting about the amount of oil consumed as shown on the service ticket. Kenty told Frick to go ahead and sign the ticket, that the amount of oil was about right considering the plane's condition. Frick then signed the ticket, the original of which was delivered to him, and the two men then proceeded back out to the plane, which had not been moved from

the place they had left it. Kenty took the left side seat and piloted the plane on take off. After climbing to about 3,000 feet he turned the controls over to Frick for the flight back to Dallas.

After traveling around 140 miles toward Dallas, the motor of the plane suddenly stopped. Kenty then took over the controls and when he found that there was a fuel failure he started looking for a landing place, lowered the landing gear, thought he saw a landing strip, which later proved to be a new highway under construction, and that is the last thing he remembers. The plane crashed, as a result of which Frick was killed and Kenty severely injured.

The plane was equipped with a gasoline gauge which was located between the two seats and which was in working condition. Kenty did not check such gauge prior to taking the plane off at Tulsa, although he checked all the other instruments, nor did he check it at any time after taking off and prior to the crash. Neither did he check the NC number shown on the service ticket to see if it corresponded to the NC number of his plane. He was able to give the NC number of his plane from memory, however, at the time of the trial some four years after the accident.

Defendants' answers to plaintiff's petition consisted of a general denial, pleas of unavoidable casualty and contributory negligence by reason of failure to check the gasoline gauge before leaving Tulsa, failure to check the gasoline gauge after leaving Tulsa, failure to land the plane at any of the airports between Tulsa and the scene of the crash in order to refuel, failure to give the defendant the serial number of the plane to be serviced and failure to use the care and caution which a person of his experience should have exercised under the same circumstances prior to departure from Tulsa, and an allegation that defendant carried out the instructions given by the plaintiff or his companion.

In support of their contentions, defendants introduced the testimony of a commercial pilot who, as an expert witness, testified that it is customary for a pilot, before he takes off, to satisfy himself that he has a full gasoline tank; that the NC number is an integral part of the operation of a plane, as it is constantly used as a means of identification; that he always checks his fuel even though he was received a service ticket from a reputable, first class service company; that he had never failed a single time to check his gas gauge before taking off and that it is drilled into every pilot to check the fuel supply before taking off.

It was also brought out by cross-examination of plaintiff that the plane was one normally used by him and that he was what might be called the senior pilot of that particular plane and was responsible for the overall operation of seeing that the plane was in proper flying condition. It was also brought out that it would have taken about a second to look at the gasoline gauge and a similar time to look at the NC number on the service ticket, but that plaintiff did neither.

The court correctly instructed the jury on the issues generally, including that of contributory negligence. The instructions requested by plaintiff and refused by the court are as follows:

"No. 1. You are instructed that plaintiff in this case was under the duty to exercise ordinary care for his own safety, and to exercise that degree of care that men of reasonable vigilance or foresight ordinarily exercise in the operation of airplanes. He is not bound to anticipate negligence which results in injury where he had no occasion to believe that the defendant had neglected to perform the services it had agreed to render. In other words, the defendants in this case cannot complain of a want of care on the part of the plaintiff where such care is only rendered necessary by the wrongful acts, if any, of the defendants or either of them.

"No. 2. You are instructed that the defendants were under the duty to exercise ordinary care in undertaking to carry out the contract which was made for the servicing of the plane in which plaintiff was injured. But you are further instructed that what is ordinary care in one set of

circumstances might amount to gross negligence in different circumstances. Ordinary care within the meaning of the law contemplates the doing of all things which an ordinarily prudent person would do and the manner in which he would accomplish the same, in keeping with the hazard and the possibilities which attach to the undertaking.

"And in this connection, you are instructed that the defendants would not have any right to assume or expect that any failure to service the plane with gasoline on their part would be discovered by the plaintiff or his companion before they took off or had exhausted the then supply in the plane.

"No. 4. The plaintiff's failure to anticipate negligence on the part of the defendants which negligence, if any, resulted in injury, is not negligence and will not defeat an action for the injuries sustained. A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care will be used to protect him and his property from injury. No one can complain of the want of care in another where care is only rendered necessary by his own wrongful act.

"No. 5. Although reliance upon performance of duties by others does not excuse one from exercising due care for his own safety, it does excuse him from taking active measures for his own protection.

"The presumption is that a duty established by usage and custom will be duly discharged. One to whom duty is owed has a right to assume that it will be performed. He is not required to anticipate negligent acts or omissions on the part of others.

"When the defendants accepted the order for the servicing of the plane in which plaintiff was injured, it owed the plaintiff the duty of exercising ordinary care in carrying out the requirements of the servicing. Plaintiff had a right to rely upon the defendants to exercise such ordinary care

and carry out their obligation to service the plane, until and unless something came to his attention which would have been a warning to an ordinarily prudent man to investigate further or question whether the defendants had performed the obligations assumed.

"No. 6. If the defendants, by their own acts, have thrown the plaintiff off his guard and given plaintiff reason to believe that vigilance was not needed, the lack of such vigilance on the part of the plaintiff is no bar to plaintiff's claim. If you find and believe from the evidence in this case that the events which occurred would cause an ordinarily prudent man to be lulled into a sense of security or thrown off his guard in respect to those things which he ordinarily would and should do preparatory to a flight in an airplane; then it is for you to consider whether he acted as an ordinarily prudent person would under the same circumstances in considering whether he was guilty of such contributory negligence as to cause his injuries."

Plaintiff's requested instruction number three was one for an instructed verdict, which we do not deem it necessary to discuss here.

We do not believe the court erred in refusing to give the above quoted requested instructions. A careful analysis of these requested instructions reveals that they in in effect instruct the jury that the plaintiff was not guilty of contributory negligence or that certain acts or factual situations do not constitute contributory negligence. The giving of such instructions would constitute error. Section 6, Article 23 of the Oklahoma Constitution provides that contributory negligence shall in all cases be a question of fact and at all times be left to the jury. This court has repeatedly condemned instructions that sought to set out facts which would or would not constitute contributory negligence. Owens v. Turman Oil Co., 183 Okl. 182, 80 P.2d 576; Wichita Falls & Northwestern Ry. Co. v. Woodman, 64 Okl. 326, 168 P. 209; Payne v. Toler, 94 Okl.

98, 221 P. 26; Southwestern Cotton Oil Co. v. Fuston, 173 Okl. 185, 47 P.2d 111.

As we have many times held, the proper instruction in such a case is to define to the jury contributory negligence as that term is used in Section 6, Article 23 of the constitution and to submit the question to the jury. Flanagan v. Oklahoma Ry. Co., 201 Okl. 362, 206 P.2d 190; City of Norman v. Sallee, 205 Okl. 419, 238 P.2d 292; Payne v. Toler, supra; Wichita Falls & Northwestern Ry. Co. v. Woodman, supra. That is exactly what the trial court did. In its instruction number 7 it properly defined the term contributory negligence and submitted the question to the jury.

The requested instructions are contrary to the well-established rule in this state, and were properly refused.

Judgment affirmed.

JOHNSON, V. C. J., and WELCH, CORN, DAVISON, ARNOLD and BLACKBIRD, JJ., concur.