**GILDNER v. BALTIMORE & O. R. CO.**
No. 420.

Circuit Court of Appeals, Second Circuit.
June 14, 1937.

636

Harold R. Oakes, of New York City, (Robert Schwebel, of New York City, on the brief), for appellant.

Anthony Sansone, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the defendant from a judgment entered upon the verdict of a jury in an action by a conductor in its employ, to recover for personal injuries suffered in a switching yard on the night of January 11, 1934. The yard was full of tracks, and the freight train of which the plaintiff was in charge, came in and stopped upon one, called the "passing siding track," just north of the main, or through, track.

The plaintiff's first duty was to check the new cars which he was to take on, and to do so he went south across the main track to the tracks of another road, where the new cars lay. After checking these he walked east some seven or eight hundred feet to the station office, and then started back westward to reach his train. Meanwhile the work of switching had been going on. The sixteen front or east cars of the train were cut off, with the engine at their forward end. Ten of these were delivered to the Lehigh Valley Railroad, four were placed on the main track, and two on the "passing siding track," some distance away from the tail of the original train. The time had come to clear the main track of the four cars left upon it, so that a passenger train might pass. The engine with some cars were backed on to the main track, coupled on to the four cars, and the string of twelve to fourteen in all moved east along the main track until it cleared the "passing siding" switch, where it stopped, but only long enough to reverse and back into the "passing siding track." As it came along that track, the first car of the string struck the plaintiff, who was about ninety feet from the switch, threw him down, and ran over his arm. (The defendant's witnesses swore he was struck by a later car). He was between the south rail of the "passing siding track" and the north rail of the main track, and he says he got there as follows. He first walked west from the station along the north side of the main track, and then crossed over to the south side; while walking on that side, the string of east bound cars passed him. He then crossed the main track again to the north side, and went on as he had originally. The fault with which he charged the defendant was in failing to ring the bell at the time the engine, after stopping its eastward movement, began to back the string on to the "passing siding track." He relied upon a rule of the road that "the bell will be rung when an engine is about to move; when moving through tunnels; along the streets of towns and cities; approaching and passing public road crossings at grade, stations and trains on adjacent track." Whether the bell was rung was in dispute, but the verdict is conclusive that it was not.

The indiscriminate ringing of bells in a switching yard has been disapproved by the Supreme Court, as tending rather to confuse than to warn (Aerkfetz v. Humphreys, 145 U.S. 418, 420, 12 S.Ct. 835, 36 L.Ed.

758; Toledo, St. L. & W. R. R. Co. v. Allen, 276 U.S. 165, 171, 48 S.Ct. 215, 217, 72 L.Ed. 513); but the first clause of the rule required the bell only at the start. On the other hand it is true that anyone who saw the string moving east and stopping just beyond the "passing siding switch," would have known that it would back out of the main track; the plaintiff admitted that he knew this, though he would not acknowledge that he could tell which track it might choose. But whether the pause would be only long enough to reverse, or whether something might delay the return for a few moments, no one could say; if the rule were construed to cover any stop whatever, that uncertainty would be met and it would not be necessary to speculate as to when the engine was "about to move." Perhaps it is too much to say that there was a general agreement among the men that this was what the rule meant, but there was nearly that. The plaintiff several times declared that he was expecting a signal; and several of the defendant's witnesses assumed that the situation was within the rule. Simpson, the brakeman, certainly thought so; Breen and Collins probably did, though the matter up at the moment was not so much whether the bell should be rung at all, as whether it must continue ringing. Our decision in Van Derveer v. Delaware, L. & W. R. R. Co., 84 F.(2d) 979, is not in point; the question was whether the train was so far "stopped" as to justify changing the switches; that depended upon whether it was going to use them again, which a momentary pause did not disclose, but which could be ascertained before the "line-up" was changed. On the other hand the general work of the yard must always go on; men must move about from place to place, and cannot be asked to find out how long a pause may be, even when it is obviously to be followed by a reverse movement. The convenient and safe way is to ring the bell whenever the engine moves, and the rule ought to be so understood.

The defendant's other points are less serious. Rule Four required all employees to "keep off all tracks except in the discharge of duty, and when stepping out of the way of approaching trains * * * go far enough to clear all running tracks. Before stepping upon or crossing a track they should look in both directions." The argument is that when the plaintiff crossed the main track from south to north he did not look to his right—east; and that if he had, he would have seen the string already moving west to gain the "passing siding track." Twice he said that the string was stopped at that time; and there is no reason to suppose the contrary. Moreover, that aside, this rule was no more than a general cautionary regulation; quite different from those whose violation is a bar as distinct from contributory negligence. It is only when the rule prescribes specific conduct that disobedience has so grave a consequence; all the cases in the Supreme Court have been of that kind; we think that the same is true of the lower courts. Indeed to hold that by enacting general admonitions of care as rules, a road can make all carelessness a bar, would repeal section 53 of title 45, U.S.Code (45 U.S.C. A. § 53). We see nothing in the assertion that the plaintiff assumed the risk of being struck from behind by walking where he did. Nobody has ever been able to say just where assumption of risk ended and contributory negligence began; but if the rule meant what we have said, there could be no assumption of risk, unless the bell was rung. It did not damage the defendant to leave the meaning of the rule to the jury, for the judge should have construed it in the plaintiff's favor anyway. The strictures upon the charge need no discussion.

Judgment affirmed.