## S. H. KRESS & CO. v. NASH, Adm'x.

No. 27863.   Oct. 18, 1938.

Joe I. Pitchford, Q. D. Gibbs, and Jas. C. Cheek, for plaintiff in error.

Saul Yager and Moss & Young, for defendant in error.

OSBORN, C. J. This action was instituted in the district court of Okmulgee county by Jack Nash, administrator of the estate of Duval Orr, deceased, against S. H. Kress & Company, wherein it was sought to recover damages for the alleged wrongful death of the said Duval Orr. Issues were joined and the cause tried to a jury, and a verdict was returned in favor of plaintiff. From a judgment thereon, defendant has appealed. Pending the appeal Jack Nash died, and by order of this court Mrs. May Nash, administratrix of the estate of Duval Orr, deceased, was substituted as defendant in error. The parties will be referred to in the order of their appearance in the trial court.

As grounds for reversal defendant urges that the trial court erred in overruling its demurrer to the evidence and refusing to instruct a verdict in its behalf. It is therefore necessary to make a short statement of facts.

Deceased, a young man about 20 years of age, was employed in the store of defendant at Okmulgee, as a stock boy. On January 9, 1936, said deceased was ordered to wash some windows on the second floor of the store building. While engaged in the performance of said duties and while standing on the window sill on the outside of the building, deceased fell, thereby receiving injuries which resulted in his death about 12 hours later.

The theory upon which recovery was sought is that defendant was negligent in failing to furnish deceased a safe place in which to work and in failure to furnish proper equipment with which to work, and that such negligence was the proximate cause of his death. In this connection defendant called as a witness J. W. Cubberson, the manager of the store, who testified that he gave deceased certain specific instructions about the method of washing the windows. The testimony of said witness was as follows:

"A. I directed him—I called him up, told him to get a bucket of water about two-thirds full and a chamois. I washed the inside just for a sample, of course, but just standing on the floor. * * * A. After I washed the inside of the window I instructed him how or showed him how to wash the outside. There was an iron bar about 18 inches, fastened to the front of the window by the sill, and if necessary to stand up there with one leg on either side of the bar—it is about a one-inch pipe—and reach out over the window and wash the outside of the window by pushing the windows back and forth; and after washing the lower, if necessary, he could step down and wash with his elbows on the outside, but positively not to get on the outside or stand on the outside ledge of the window. A. After I finished the said instructions, I told him that if necessary he could sit in the window, as has been stated, but hold on to the bar with one hand and all he needed to do with the other hand was to wash the window and pull the window down in front of him. A. I instructed him positively not to stand on the outside. I did not want him on the outside of the window at all; I could see danger if he did get out."

The plaintiff contends that defendant, in effect, provided two methods for washing windows, either of which was dangerous. Plaintiff called as witness one Bert Bank, who qualified as an expert in the business of window washing. We quote from the testimony of said witness as follows:

"Q. Now, please, sir, will you explain to the court and jury what is the danger, if any, in person attempting to sit on the window-sill and lower either the outer or inner sash down to his limbs and by that method, without a safety belt, hold himself in a position to wash windows? A. The danger involved in that procedure would be in the fact that your body—the major part of your weight is outside the window. If there is any possible chance to slip, and

there is, because of the fact you are practically sitting on your limbs right here (indicating): the lower part of the sill outside is lower than the inside sill, naturally not particularly on center, and you are practically sitting on your limbs here (indicating) which is tiresome, and the fact that your balance or weight is practically entirely outside, makes it, if there is any slip up or you do slip or anything, there is little chance of your catching yourself. Q. Now, because the major portion of the weight of the body is on the outside of the sill, not resting on the sill, and the upper part of the limb is straight, that has a tendency to push the window up, doesn't it? A. Yes, sir."

The evidence discloses that bolts or terminals had been fastened into the framework around the windows which deceased was directed to wash, to which a safety belt might be attached. Plaintiff contends that it was the duty of defendant to furnish a safety belt to deceased and that the failure to do so constituted the negligence which was the proximate cause of the death of deceased. Defendant argues that safety belts were not commonly used in Okmulgee. It is obvious that there was certain risk or danger attached to washing the outside of the windows on the second floor of defendant's store; that the method employed by deceased was dangerous and that the method authorized by the store manager was likewise dangerous. The fact that there may be dangers connected with the general class of work the servant is directed to perform, which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due to dangers which the exercise of ordinary care would remove. Negligence is the absence of care according to the circumstances of the case, and is always a question for the jury when reasonable men might differ as to the facts, or as to the inferences to be drawn from them. Chicago, R. I. & P. Ry. Co. v. Schands, 57 Okla. 688, 157 P. 349; Wright v. Clark, 177 Okla. 628, 61 P.2d 192. Under the instructions of the court, it was for the jury to determine whether or not defendant had fully discharged the duty incumbent upon it. The fact that safety belts manufactured for use in washing windows were not in common use in Okmulgee was a factor to be considered by the jury, but is not determinative of the issue and does not justify a conclusion by the court, as a matter of law, that there is no negligence on the part of defendant. We are not justified in setting aside the finding of the jury on the issue of negligence.

Complaint is made of the failure of the trial court to give certain instructions requested by defendant. We quote two of said requested instructions, as follows:

"You are further instructed that the law imposes the duty upon a servant, where there are two ways to perform the work, one safe or reasonably so, and one dangerous, to choose the safe way, if he knows it, and if you find from the evidence that Orr was instructed to sit down and not stand up, while washing the outside of the windows, and you further find that he disobeyed such instructions and stood up while washing said outside windows, then and in that event, he was not doing what the law required him to do and if you find such disobedience was the cause of his death or contributed thereto, the breach of this duty would constitute negligence upon his part.

"You are instructed that where an employee violates the positive instructions of his master as to the method of doing the work, and attempts to follow his own ideas in the matter and is injured, he cannot hold his master liable. And in this connection I instruct you that if you believe from the evidence in this case that J. W. Cubbison, the manager of S. H. Kress & Company, the defendant, gave the deceased, Duval Orr, positive instructions not to stand on the outside of the windows and that said deceased violated those instructions and attempted to follow his own ideas as to how to wash said windows that is by standing on the outside and fell while so standing, then and in that event, your verdict must be for the defendant."

Defendant urges that it is entitled to certain instructions outlining its theory of the case, said theory being that the proximate cause of deceased's death was his disobedience of the orders given by the manager; that said disobedience constituted contributory negligence. The authorities cited from other jurisdictions on this point are not applicable in this jurisdiction, for the reason that under the provisions of section 6 art. 23, of the Constitution, the defense of contributory negligence is a question of fact which at all times must be left to the jury. The jury alone can determine whether the facts as they find them to exist constitute contributory negligence, and it is not error for the trial court to refuse to instruct the jury that a certain set of facts, if found to be true, constitute contributory negligence. Mascho v. Hines, 91 Okla. 295, 217 P. 856; St. Louis & S. F. R. Co. v. Russell, 130 Okla. 237, 266 P. 763; Southwestern Cotton Oil Co. v. Fuston, 173 Okla. 185, 47 P.2d 111. The trial court did not err in refusing the instructions re-

quested by defendant. The record discloses that the jury was instructed upon the issues of negligence, proximate cause, contributory negligence, assumption of risk and measure of damages. Under the issues made by the pleadings and evidence, other instructions would have been unnecessary and improper.

It is urged that the verdict of the jury is so excessive in amount as to indicate passion and prejudice. In this connection the recovery was fixed at $6,000 on the first cause of action, which included the items of service during minority and probable contributions after majority. Such amount under the evidence in this case is not excessive. See Fike v. Peters, 175 Okla. 334, 52 P.2d 700; Southwestern Light & Power Co. v. Fowler, 119 Okla. 244, 249 P. 961; Muskogee Electric Traction Co. v. Richards, 97 Okla. 61, 222 P. 265, and cases cited therein.

Recovery was also fixed by the jury in the sum of $3,000 on the plaintiff's second cause of action, involving the element of pain and suffering. In this connection it may be noted that there is no standard by which physical pain and suffering may be measured and compensated for in money. 17 C. J. sec. 221. The amount of an award for pain and suffering rests ordinarily in the sound and intelligent discretion of the jury (17 C. J. sec. 222), and the amount should not be disturbed on appeal unless the award is clearly excessive. Missouri Pac. Ry. Co. v. Hendricks (Ark.) 277 S.W. 337. The evidence in this case discloses that deceased was injured at approximately 11:30 a. m. on January 9, 1936, and that he lingered until approximately 1:00 o'clock a. m. the following day. The physician who attended deceased testified that he was unconscious during all of this period and in his opinion deceased suffered little if any conscious pain. Various lay witnesses were offered on behalf of plaintiff whose testimony was to the effect that prior to the death of deceased he had conscious moments and gave indications of suffering. In view of the length of time during which deceased lingered before his death and in view of the nature of the evidence on the point, we are of the opinion that the verdict of the jury, in so far as this item is concerned, is clearly excessive and should be reduced to the sum of $500.

Other assignments of error have been considered and are without substantial merit.

The judgment of the trial court is affirmed, upon condition that plaintiff within 15 days from the filing of mandate in the trial court, file a remittitur of $2,500; otherwise, the same is reversed and the cause remanded, with directions to grant a new trial.

BAYLESS, V. C. J., and RILEY, WELCH, GIBSON, HURST, and DAVISON, JJ., concur. CORN, J., dissents. PHELPS, J., absent.