Hillsborough,
Jan. 2, 1940. } No. 3095.

WILBUR E. BILL

*v.*

NEW ENGLAND CITIES ICE COMPANY,

AS BALCOM-NASHUA ICE COMPANY.

*Ivory C. Eaton* and *Robert F. Griffith* (*Mr. Eaton* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Wiggin* (*Mr. Wiggin* orally), for the defendant.

BRANCH, J. To establish the defendant's negligence, the plaintiff called as expert witnesses, two men who were familiar from long experience with the construction and operation of trucks and who examined the truck in question immediately after the accident. They both testified, in general terms, that the body of this truck was mounted upon the chassis in such a way as to make it top-heavy and cause it to tip quickly. This testimony, if acceptable at its face value, would support a finding that the defendant furnished for the use of the plaintiff a defective and dangerous instrumentality.

In order to escape this conclusion, the defendant argues as follows: "The defendant submits that in order for reasonable men to find that such equipment was, in fact, not reasonably proper, there must be in evidence a standard by which this truck body can be compared. Merely because a man observes and forms the opinion that a truck body is narrow and high is not sufficient proof. Such construction may well be reasonable and proper. It may well be standard construction for the particular business for which it was designed. To say that it is too narrow, too high, and top-heavy is not, therefore, in and of itself sufficient to form a basis for a finding of legal liability on the part of the master. Nowhere in the evidence produced by the plaintiff are there any facts upon which the jury could base and establish a standard of reasonable construction. Any finding, therefore, made by the jury of improper construction must have been based upon guess and conjecture as to the standard required."

One answer made by the plaintiff to this argument is that the testimony of his expert, Sirois, did furnish the basis from which a "standard of reasonable construction" might be found. The testimony of this witness is summarized in the plaintiff's brief as follows: "He testified that in the construction of trucks, eight inches from the top of the wheel was the absolute limit and that a body which was placed higher than that was unstable and top-heavy." It may be that this is a permissible construction of Mr. Sirois' testimony, but the testimony itself is so obscure and incoherent that we hesitate to adopt it as a basis of decision. The unsatisfactory character of this testimony results, in part, from the apparent inability of the witness to complete the expression of a single thought before going on to another, and in part, to the obscurity of the questions put by counsel to the witness, of which the following is an example: "Q. Now Mr. Sirois (illustrating and indicating on the board), here are the wheels of your truck, and there the center, and what you are stating is up here 8 inches? A. That is right, 8 inches above."

Testimony of this kind may have been understandable to the jury but when read in print it is practically meaningless.

No authority is cited in support of the defendant's argument however, and the complete answer thereto is that the language above quoted does not embody, either in statement or application, any recognizable rule of evidence. Expert witnesses are called to give their opinions on subjects about which they have special knowledge and experience, upon the assumption that, by reason of these qualifications, they will be able to assist the jury in its search for the truth. When a duly qualified expert undertakes to give his opinion as to the proper or improper construction of an instrumentality, the basis for his conclusion is assumed to lie in his special knowledge of such matters and there is no rule of law which requires that before he shall be permitted to express such an opinion "there must be in evidence a standard" by which the judgment of the expert must be governed. Experts are subject to cross-examination as to the extent of their knowledge and the basis of their conclusions. The weight of their testimony will depend upon the character and extent of their special knowledge and experience. There is no rule of law which determines the question whether the testimony of a duly qualified expert is "sufficient to form the basis of a finding" of fact.

The defendant further argues as follows: "The truck body used by the plaintiff at the time of the accident was a standard ice truck body of a type commonly used in the ice business in the cities of Nashua and Manchester and in Lowell, Massachusetts. . . . Unless there is evidence that the standard equipment in general use is improper, inadequate or unsafe, then that standard should be used as the measure by which to judge the master's exercise of due care. . . . The defendant claims that there was no evidence which contradicts the fact that the truck body in question was of a standard type in general use."

In advancing this argument the defendant assumes that the testimony of its own witnesses must be accepted as conclusively establishing the fact that the truck body in question was of a standard type in general use. There are many reasons why this argument cannot be adopted, but it will be sufficient to state two of them. In the first place, if it were true that the testimony of the defendant's witnesses was uncontradicted, this fact would not compel the acceptance of their statements as proof of the facts stated. The weight of their testimony would still be for the jury to determine and the

jury might, if it saw fit, reject it entirely as worthless. In the second place, the argument of the defendant that "there was no evidence which contradicts the fact that the truck body in question was of a standard type in general use" is not borne out by the testimony and, if strictly true, would be inconclusive since it ignores entirely the decisive factor in the plaintiff's claim of negligence, namely, the height at which the body in question was mounted upon the chassis of the truck. If by this argument the defendant means to suggest that there was uncontradicted evidence to the effect that the composite vehicle which the plaintiff was driving at the time of the accident was of standard construction, the answer is to be found in the testimony of the expert Mercer, who testified as follows: "Q. Will you tell the jury what the construction of that body was? A. It was—well, just the same as any ice body, you might say, only it was narrower, narrow ice body, and built up considerably higher, very noticeably, over the frame; it had, you would call them possibly, a beam, between the body of the truck and the frame of the Ford, so as to set it up and give it plenty of clearance so the tires wouldn't strike on the body of the truck, so when going around a curve, it wouldn't lay over and strike the tires. Q. What would be the effect of having that up there? A. Make it tip quickly."

The defendant contends that the plaintiff was guilty of contributory negligence and advances the argument that "as a matter of law, the plaintiff was negligent in failing to see the dog's approach in time to have avoided the subsequent situation where instinctive action resulted in the truck tipping over." This argument does not invite extensive consideration. It is sufficient to say that the testimony does not compel the conclusion, as a matter of law, that the plaintiff was negligent in failing sooner to discover the presence of the dog in the road.

The contention of the defendant that the "construction of the truck body was not the proximate cause of the plaintiff's injuries" is equally without merit. The argument advanced in support of this proposition is that "the proximate cause of those injuries was the plaintiff's own unreasonable operation of the truck, when he suddenly swerved it to its left and ran over the dog with one of the front wheels of the truck." The evidence of the manner in which the accident occurred fully justified a finding that the truck tipped over because of its top-heavy construction and that the accident would not have occurred if the truck body had been mounted with due regard to the essential factor of stability.

Neither can it be said as a matter of law that the plaintiff assumed the risk. Although he had been driving the truck in question for two months before the accident, he testified that he had never had trouble with it before and it might be found that he had no knowledge of its dangerous instability.

It follows that the defendant's motions for a nonsuit and a directed verdict were properly denied.

The other exceptions of the defendant which appear in the record have not been argued but have been examined and found to be without merit.

*Judgment on the verdict.*

All concurred.