The **HUNTER CONSTRUCTION COM-PANY**, a corporation, Plaintiff in Error,

v.

Saletha **WATSON**, Defendant In Error.

No. 34462.

Supreme Court of Oklahoma.

April 14, 1953.

Rehearing Denied Sept. 14, 1954.

Application for Leave to File Second Petition for Rehearing Denied Sept. 28, 1954.

struction Company, a corporation, as defendant.

Saletha Watson, the widow of A. R. Watson, sued to recover damages for the alleged wrongful death of the deceased. The plaintiff recovered a judgment in the trial court. The defendant appeals contending that the verdict and judgment rendered is not sustained by the evidence and is contrary to law.

A resume of the record discloses that defendant was engaged in the construction of roads and highways; that in its construction work upon two road projects, one being near Lindsay in Garvin County, and the other near Waurika in Jefferson County, Oklahoma, it used a large new motor grader, known as the Adams 610 motor grader. This machine weighed 26,650 pounds and was driven by a heavy Diesel engine. The machine has six wheels. The four wheels on the rear of the machine are the drive wheels and the two wheels in front are the steering wheels. There was a cab over the driver's seat, and within the cab there were several levers, wheels and rods used by the driver in the control and operation of the machine. A steel arch-shaped beam or frame extended in front of the driver's cab to which frame was attached a circle holding a scraper blade approximately 14 feet long. This circle could be manipulated by the driver sitting in the cab so as to cut earth on the level or in an upward position, on either side of the machine, to a height of approximately 10 feet, or below on either side of the machine to about six feet, while the wheels of the machine were running on level earth. The defendant had been engaged in grading and filling work on a highway near Waurika, which work was not entirely finished when defendant commenced road construction work upon the Lindsay project. In October, 1948, the defendant's superintendent, Mr. Wiles, instructed Mr. Watson and two other of its workmen to take the grading machine, a Caterpillar bulldozer, and steel cables and other road equipment to Waurika, and complete the road work on that project. The superintendent furnished Watson a blueprint of the road and explained the

Rainey, Flynn, Green & Anderson, Oklahoma City, Kerr, Lambert, Conn & Roberts, Ada, for plaintiff in error.

Hardin Ballard, Purcell, Howard K. Berry, Oklahoma City, for defendant in error.

O'NEAL, Justice.

The parties will be referred to as they appeared in the trial court, that is, Saletha Watson, as plaintiff, and The Hunter Con-

work to be performed by him and his fellow employee. The superintendent advised Watson that there were two slopes along the new road, which were approximately 18 feet high, and specifically admonished him not to use the heavy grader machine on these cuts; that if he found it necessary to do work upon these cuts or slopes to use the I-beam. After Watson and his coworker, Horace Thomas, arrived at Waurika, they conferred with representatives of the State Highway Department with reference to the road work to be performed. A third employee, who had assisted in moving the road equipment to Waurika, was not present when the subsequent accident occurred as he had returned to Lindsay.

On the afternoon of the first day's work, Watson, contrary to his instructions, attempted to use the heavy grader on the north slope of the cut. The machine had proceeded to a place so that the front wheels were near the top of the cut, all wheels of the grader then being on the slope of the cut, when suddenly it became overbalanced and turned over on its left side, pinning Watson underneath the cab, resulting in his instant death. Thomas, his helper, immediately prior to the accident, was engaged in operating a bulldozer on the south side of the road. Watson told Thomas to back his bulldozer out of the way as he, Watson, was going to use the big machine to slope the south bank. Thomas replied: "Mr. Watson, you can't do it." That thereupon Watson replied: "The hell I can't do it. I have sloped banks steeper than this and you know it."

Mr. Milam, Vice-president of the defendant's company, met Watson as he was driving the big machine down the highway north of Lindsay. He testified that he asked Watson what road he was taking to go to Waurika, to which Watson replied that Mr. Wiles told him to take the road going by Pauls Valley. Milam asked Watson if he thought Thomas could do the work at Waurika, and Watson replied that he knew Thomas could as he had worked with him on other jobs. Milam then asked Watson what instructions he had received from Mr. Wiles, to which Watson replied that he had gone over the

blueprints with Wiles and was instructed to finish the job with the exception of the rough cut on the middle of the job, and the back cut in the east end of the job.

Thomas, Watson's coworker, testified that he was present when defendant's superintendent, Mr. Wiles, told Watson to stay off of the steep grades. Thomas testified as follows: "He told us when we got down to Waurika, he told us, he said, 'Just work around on bridges and culverts' and said, 'Don't fool with those banks because they were too steep' and he said that he would be down there in just a day or so."

The evidence is without dispute that Watson was an experienced workman in road construction work. He had worked as a superintendent of construction work for Ottinger Bros. and had operated the Adams 610 Motor Grader for The Hunter Construction Company on the Lindsay project for a period of months prior to the accident referred to.

■■ Plaintiff seeks to sustain the judgment rendered in her favor on three separate grounds:

(1) That the servant's violation of a master's rule will not defeat plaintiff's recovery where the evidence disclosed primary negligence of the master, and where the proximate cause of the alleged violation of the rule must be submitted to the jury with other controverted issues; (2) that the employee here placed in temporary charge of the work upon the Waurika project is not deprived of his previous rights to be furnished a safe place in which to work and safe tools with which to work; and (3) that the instructions as a whole, properly embody the applicable law as applied to the proven facts.

Although defendant in its motion for a new trial and by petition-in-error, advances numerous grounds upon which defendant contends that the verdict and judgment thereon should be set aside, we think that all grounds may properly be merged in the defendant's assertion that the verdict of the jury is not sustained by the evidence and is contrary to law.

As we view this record we are compelled to the conclusion that plaintiff has failed to

establish primary negligence of the defendant, and therefore the lower court erred in refusing to sustain defendant's demurrer to plaintiff's evidence, and in refusing to sustain defendant's request for an instructed verdict. As we have seen from our statement, supra, Watson was specifically told by two officers of the defendant company not to use the heavy machine on the steep grades or slopes of the road. He was warned by his fellow employee, Thomas, of the danger involved. The master had furnished him the Caterpillar bulldozer tractor, steel cables and I-beam for use on these steep cuts and grades. It is not suggested that the use of the bulldozer equipment was not a proper equipment for use upon the steep grades, but, on the contrary, it is shown that this kind of equipment is uniformly employed by road contractors in cutting down steep grades and slopes. It is axiomatic that every violation of a rule of the master does not relieve the master of liability resulting in injury to an employee. It is conceivable that where an employee is confronted with an extraordinary situation requiring the sudden exercise of judgment or discretion, that a variance of or a direct violation of the master's rule or direction, is justifiable and will not relieve the master when there is probative evidence of negligence.

In the case at bar there can be no recovery for the reason that the death of Watson proximately resulted from his own negligence in attempting to use the heavy machine in a place where it could not be used, and in a place where he had been told by his employer not to use it.

█ We held in Hanson, Ex'x v. Atchison, T. & S. F. Ry. Co., 184 Okl. 480, 88 P. 2d 348, and Kurn v. Reese, Adm'x, 192 Okl. 78, 133 P.2d 880, that where an employee deliberately disregards a rule or instruction of his employer thereby placing himself in a place of danger resulting in his injury, that the employee is guilty of primary negligence barring his recovery for injuries.

The plaintiff, Saletha Watson, argues that the Hanson and Kurn cases, supra, have no application for the reason that they arose under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The Federal Employers' Liability Act makes the carrier liable in damage for any injury or death resulting in whole or in part from the negligence of any of its officers, agents or employees. The rights which the Act creates are federal rights protected by federal rather than local rules of law, but those rules have been fashioned from the common law. However, under the Federal Act, the employee must, as in the State Court, allege the act of negligence relied upon and must make out a submissible case as to the negligence and its causation. The Act in its essential features is based upon the common-law concept of negligence, subject to certain qualifications, not upon the more modern concept of liability under various workmen's compensation acts. Bailey, Administratrix v. Central Vermont Railway, Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.

█ Where the evidence fails to establish any primary negligence or a breach of duty imposed upon the employer, it is the duty of the trial court to sustain a motion of a defendant for a directed verdict.

In Sanders v. McMichael, 200 Okl. 501, 197 P.2d 280, 283, we said:

"The question of negligence or no negligence is one of law for the court where but one inference can reasonably be drawn from the evidence; and, where the plaintiff fails to show primary negligence or breach of a duty on the part of defendant then judgment must be for defendant."

In Norman v. Scrivner-Stevens Co., 201 Okl. 218, 204 P.2d 277, 278, we held:

"The proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury."

The remaining question as to whether Watson was a vice-principal and that defendant did not owe him a duty of providing a safe place to work or safe tools and equipment to use, need not be further considered,

in view of our disposition of the case that plaintiff failed to make a case upon which relief could be granted.

The case is reversed.

HALLEY, C. J., and DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.

JOHNSON, V. C. J., and WELCH and CORN, JJ., dissent.

JOHNSON, Vice Chief Justice (dissenting).

I cannot concur in the majority opinion. The plaintiff, inter alia, alleged that deceased was in the employ of the defendant, The Hunter Construction Company, and at the time of his death was engaged in operating an Adams Diesel 610 Motor Grader with cab attached; that said motor patrol grader was top heavy and unsuitable for cutting slope or working on grades; that where there was danger of the machine overturning, that is, when such machine was being used on steep grades and fills, or construction work, a usage and custom required the removal of the cab by the employer; that in furnishing such a machine and directing its use in the performance of the work, defendant adopted and employed an unsafe manner and method of work; that the cab of the machine was equipped with narrow doors on each side, partially obstructed by levers and rods extending into the operator's compartment which narrowed, and limited ingress and egress into and from said driver's compartment; that deceased was thrown from one of the doors of the cab of the machine into the path of the overturning bulk so that it struck him and crushed him, causing his death; that defendant knew, or should have known by the exercise of ordinary care that the work which it required of the deceased consisted of scraping and finishing sloping surfaces and the operation of the motor grader upon such surfaces; that the general custom by reasonably prudent construction contractors was to remove the cabs from motor patrols such as the one used here on this construction project, and that only in ordinary maintenance work was it customary, safe or advisable to op-erate such machines with cabs; that the violation of this prudent custom and practice amounted to primary negligence, and was the proximate cause of the death of her husband.

Defendant, in answering, admitted that deceased was employed as alleged but denied generally all of plaintiff's material allegations, and alleged contributory negligence of the deceased and his assumption of the risk of the dangers involved in the operation of the machine and a violation of its specific instructions not to use the machine where it was being used at the time of the accident, and that at the time of the alleged accident, deceased was an experienced vice principal entrusted with the sole and complete control of the construction work, and that the accident was proximately caused by the violation of its specific instructions and the negligence of the deceased.

The defendant urges its nonliability; that the court erred in overruling its demurrer to plaintiff's evidence; and in refusing defendant's requested instructions and in giving instructions Nos. 8, 10, 12, 13 and 14 and in overruling its motions for a directed verdict and a new trial.

The record does not sustain the defendant's contention that deceased was, at the time of the accident, a vice principal entrusted with the complete control of the construction work, nor that his accidental death was proximately caused by the violation of its specific instructions to him not to use the motor patrol grader on steep grades where he was using it at the time the grader turned over. Neither is there merit to the contention that the defendant is not liable because the deceased had assumed the risk and was guilty of contributory negligence or the contention that the trial court erred in overruling defendant's demurrer to the plaintiff's evidence, its motions for a directed verdict, and for a new trial.

Defendant's further contention that the trial court erred in refusing to give certain requested instructions, and in giving certain others is also without merit. A careful examination of the record reveals no

material substantial error. The instructions as given fully and fairly covered the issues, and embraced, in substance, the matters suggested by the requested instructions. Refusal to give instructions requested by defendant is not error where instructions as a whole cover the issues and the matters suggested by the requested instructions were fully and properly embraced within instructions given by the court. Shayler v. West, 199 Okl. 386, 185 P.2d 957.

It was shown that there were certain dangers connected with the operation of motor patrol graders such as deceased was using in construction work at the time and immediately before the machine turned over and caused his death. Experienced witnesses testified that heavy motor patrols such as the one in question, when used in construction work, frequently turn over; that when this happens an enclosed cab hinders the operator in getting away, or in clearing himself of the machine; that this danger was the reason for the practice, usage and custom of removing these cabs when the motor patrol is being used in making fills and cuts and grading slopes in construction work; that construction work is distinguished from ordinary maintenance work which would permit the use of the cab on the machine without danger to the operator because the machine, when used for maintenance purposes only, would be driven more on a level. The violation of this custom and practice in construction work, and the accompanying hazard resulting therefrom in failing to remove the cab from the machine was the alleged negligent act relied upon by plaintiff as the proximate cause of the wrongful death of her husband. Upon this theory the cause was tried to the jury resulting in a verdict for plaintiff for $25,000, which the court approved.

The evidence of defendant's witness, Thomas, a coemployee of deceased, supported the verdict of the jury when he said that he was using the bulldozer and was told by deceased to move it; that he was going to use the big machine to slope the south bank and that he told him, "Mr. Watson, you can't do it," to which Watson replied, "The hell I can't do it. I have sloped banks steeper than this and you know it." Thomas was the only one present and the only eyewitness to the accident. After he had been examined at length, with reference to what he saw happen immediately before and at the time of the accident, certain specific questions were directed to him with reference to the existence of the cab on the grader, and the effect, if any, of the cab upon the attempt of the deceased to get out of it at the time the machine turned over. The questions germane to this point and his answers are as follows:

"Q. (By Mr. Berry): Did this road patrol or motor grader have a cab on it? A. Yes, sir.

"Q. When it started to turn over could you see what Mr. Watson was trying to do in the cab? A. Yes, sir.

"Q. What was he trying to do? A. To go out on the upper side—the south side.

"Q. That would be the top side? A. The top side.

"Q. Was he able to get out on the top side? A. No, sir.

"Q. What did he do after that? A. He changed over to the north side.

"Q. And did he come out through the door? A. Yes, sir.

"Q. On the lower side? A. Yes, sir.

"Q. Was that after he had first tried to get out on the upper side? A. Yes, sir.

"Q. Did he ever get the door open on the upper side? A. It wasn't closed.

"Q. What? A. The door was open.

"Q. They were both open, were they? A. Yes, sir, both open.

"Q. What was across that upper door to keep him from getting out through it? A. Gears.

"Q. Gears? A. Yes, sir."

The evidence conclusively shows that deceased was experienced in the work he

was doing at the time of the accident and by reason thereof believed that he could use the machine in question because as we have heretofore pointed out he told the witness Thomas that he had sloped banks steeper than where he was then using the machine. In the light of his past experience in the use of graders he believed that he could safely use the machine in this work as he had been doing, and but for the cab he would have been safe because he could have easily escaped from the danger zone, or got clear of the machine.

I think the only question that merits serious consideration is whether the failure of the defendant to remove the cab from its motor patrol while being used by deceased in construction work constituted primary negligence and, if so, was such negligence the proximate cause of the death of plaintiff's husband.

Expert witnesses experienced in handling such machines as deceased was using at the time of the accident disclosed that the failure to remove the cab from the motor patrol grader while it was being used in construction work (the kind of work which the deceased was to perform with the machine) was contrary to prevailing practice, usage and custom, and made the machine top heavy and dangerous. It was not, however, shown that deceased was experienced in using machines with top heavy cabs in construction work. The court properly submitted to the jury the question as to whether failure to furnish deceased with a cabless machine constituted negligence and whether such was the proximate cause of the death of decedent. Joy v. Pope, 175 Okl. 540, 53 P.2d 683; McDuff v. McFarlin, 185 Okl. 569, 95 P.2d 636; Buxton v. Hicks, 191 Okl. 573, 131 P.2d 1015; S. H. Kress & Company v. Nash, 183 Okl. 544, 83 P.2d 536. For other cases see Vol. 31, 5th Dec.Dig., Master and Servant, ■■■ 286 and 289, one of which is Bill v. New England Cities Ice Co., 90 N.H. 453, 10 A.2d 662, 664. This leading case involved an action against a master for injuries sustained when a truck being operated by servant overturned, wherein servant contended that the body was mounted on a truck chassis at improper height, making it top heavy. It was there held that testimony of Master's witnesses that truck was of standard type in general use would not preclude submission of issue of negligence to jury, whether uncontradicted or not.

In the opinion of the Bill case, supra, where defendant's defense was identical with that of the defendant's in the instant case except as to alleged violation of its instructions, it was said:

> "The contention of the defendant that the 'construction of the truck body was not the proximate cause of the plaintiff's injuries' is equally without merit. The argument advanced in support of this proposition is that 'the proximate cause of those injuries was the plaintiff's own unreasonable operation of the truck when he suddenly swerved to his left and ran over the dog with one of the front wheels of the truck.' The evidence of the manner in which the accident occurred fully justified a finding that the truck tipped over because of its top-heavy construction and that the accident would not have occurred if the truck body had been mounted with due regard to the essential factor of stability. [Emphasis mine.]
>
> "Neither can it be said as a matter of law that the plaintiff assumed the risk. Although he had been driving the truck in question for two months before the accident, he testified that he had never had trouble with it before and it might be found that he had no knowledge of its dangerous instability."

The rules announced in Buxton v. Hicks, supra, are applicable to the facts in the instant case. There we said that it was the Master's duty to furnish servant a reasonably safe place to work and reasonably safe tools and appliances, considering nature and character of the work and dangers therefrom, and master cannot delegate such duty so as to relieve him from liability for injuries to servant as a result of its violation. Therein we held that evidence of a ranch owner's failure to furnish a ranch

hand a wagon with brakes and harness with breeching to haul feed and other goods on ranch was sufficient to take to jury question of such owner's primary negligence rendering him liable for injuries to and death of such employee as a result of being thrown from wagon while going down a hill at too great speed because of mule team's efforts to keep out of way of wagon. Therein in paragraphs 1 and 3 of the syllabus, we said [191 Okl. 573, 131 P.2d 1016]:

"1. Failure of an employer to furnish an employee with reasonably safe tools with which to perform the work which the employee is required to do is sufficient to constitute primary negligence.

\*   \*   \*   \*   \*   \*

"3. Where a causal connection is sought to be established by circumstantial evidence, there are two important questions: *(1) Does the inference of causal connection spring directly and reasonably from the facts in evidence, as distinguished from arising out of another inference interspersed between it and the facts? and (2) Is there evidence to sustain the conclusion of greater probability that the injury came in whole or in part from the defendant's negligence than from any other cause? Usually, if those questions are answered in the affirmative, the causal connection is considered established, otherwise not.* Highway Construction Co. v. Shue, Adm'x, 173 Okl. 456, 49 P.2d 203." (Emphasis mine.)

In Highway Construction Co. v. Shue, supra, 173 Okl. 456, 49 P.2d 203, paragraph 2 of the syllabus, we said:

"2. In a civil case all that the plaintiff is required to prove in order to establish causal connection between defendant's negligence and plaintiff's injury is to make it appear more probable that the injury came in whole or in part from the defendant's negligence than from any other cause \* \* \*."

It is urged that deceased should have used the bulldozer and I-beam at the particular place where the accident occurred instead of the motor patrol grader; that it would have been safer and was the method he was instructed to use, and that his failure to so do constituted contributory negligence and assumption of risk and relieved defendant of all liability. This argument is untenable. Under the facts in this case, deceased, in making a choice as to using the motor patrol, did only what a reasonably prudent man would have done and what he had evidently been doing under the same circumstances. In 56 C.J.S., Master and Servant, § 450, Subsection b, the rule applicable herein is stated as follows:

"In making a choice between dangerous methods and those which are safe, or reasonably so, a servant is required to exercise only ordinary care, that is to say, the care to be expected of a man of ordinary prudence and presence of mind. In balancing ways for the purpose of making a choice between two ways of doing work, the servant is not required to make a choice unerring in the light of after events, but only such choice as, under the circumstances, a reasonably prudent man might have made."

This rule was approved in an Oklahoma case in the Circuit Court of Appeals, Tenth Circuit, Mid-Continent Petroleum Corporation v. Hane, 56 F.2d 989.

As I have already indicated, the accident was not proximately caused by the violation of specific instructions of defendant to deceased. As heretofore disclosed by defendant's witness, Thomas, the deceased admittedly had sloped banks steeper than this (that is, the place of the accident). The evidence of the manner in which the accident occurred clearly establishes the causal connection between defendant's negligence and plaintiff's injury and makes it appear more probable that the injury came in whole or in part from the defendant's negligence, thus leading to but one conclusion that the operation of the machine on

this construction job would have been safe but for the top heavy cab.

It is also contended by defendant, and the majority opinion so holds, that as a question of law, the violation of its instructions was the proximate cause of deceased's death and that such disobedience constituted contributory negligence barring recovery. I do not agree. To bar recovery it is essential that such disobedience of instructions should have been the proximate cause of the injury. It is not sufficient to bar a recovery that the disobedience was a mere condition of the injury. 56 C.J.S., Master and Servant, § 444, pp. 1263–1264.

This instruction to deceased by defendant herein, if in fact deceased was so instructed, was not a rule but was no more than a general cautionary admonition. The doctrine of employee's primary responsibility for result of disobeying employer's rule does not extend to rules generally enjoining caution or responsibility, Miller v. Central R. Co. of New Jersey, 2 Cir., 1932, 58 F.2d 635, certiorari denied, 287 U.S. 617, 53 S.Ct. 18, 77 L.Ed. 536. This rule was applied in Gildner v. Baltimore & O. R. Co., 2 Cir., 1937, 90 F.2d 635, wherein it was held that failure of trainman to look in both directions before crossing a track in a switching yard as required by a rule, did not bar recovery for injuries sustained when struck by a backing car while walking close to the track, as the rule was no more than a general cautionary regulation and it is only when a rule prescribes specific conduct that disobedience is a bar distinct from contributory negligence.

As I have already said, the proximate cause of the turning over of the motor patrol grader and resulting injury and death of deceased was the failure to remove the top heavy cab from the machine. Had the defendant furnished deceased with a cabless grader, the kind customarily used on this kind of a job the accident probably would not have occurred. At least, it was a question for the jury. The pertinent questions raised by defendant herein under this contention have been considered and disposed of by this Court in S. H. Kress Company v. Nash, supra [183 Okl. 544, 83 P.2d 538], wherein we said:

"Complaint is made of the failure of the trial court to give certain instructions requested by defendants. We quote two of said requested instructions, as follows:

"'You are further instructed that the law imposes the duty upon a servant, where there are two ways to perform the work, one safe or reasonably so, and one dangerous, to choose the safe way, if he knows it, and if you find from the evidence that Orr was instructed to sit down and not to stand up, while washing the outside of the windows, and you further find that he disobeyed such instructions and stood up while washing said outside windows, then and in that event, he was not doing what the law required him to do and if you find that such disobedience was the cause of his death or contributed thereto, the breach of this duty would constitute negligence upon his part.

"'You are instructed that where an employee violates the positive instructions of his master as to the method of doing the work, and attempts to follow his own ideas in the matter and is injured, he cannot hold his master liable. And in this connection I instruct you that if you believe from the evidence in this case that J. W. Cubbison, the manager of S. H. Kress & Company, the defendant, gave the deceased, Duval Orr, positive instructions not to stand on the outside of the windows and that said deceased violated these instructions and attempted to follow his own ideas as to how to wash said windows, that is by standing on the outside and fell while so standing, then and in that event, your verdict must be for the defendant.'

*"Defendant urges that it is entitled to certain instructions outlining its theory of the case, said theory being that the proximate cause of deceased's death was his disobedience of the or-*

ders given by the manager; that said disobedience constituted contributory negligence. The authorities cited from other jurisdictions on this point are not applicable in this jurisdiction for the reason that under the provisions of Section 6, Art. 23 of the Constitution, Okl.St.Ann.Const. art. 23, § 6, the defense of contributory negligence is a question of fact which at all times must be left to the jury. The jury alone can determine whether the facts as they find them to exist constitute contributory negligence and it is not error for the trial court to refuse to instruct the jury that a certain set of facts, if found to be true, constitute contributory negligence. Mascho v. Hines, 91 Okl. 295, 217 P. 856; St. Louis-S. F. R. Co. v. Russell, 130 Okl. 237, 266 P. 763; Southwestern Cotton Oil Co. v. Fuston, 173 Okl. 185, 47 P. 2d 111. The trial court did not err in refusing the instructions requested by defendant. The record discloses that the jury was instructed upon the issues of negligence, proximate cause, contributory negligence, assumption of risk and measure of damages. Under the issues made by the pleadings and evidence other instructions would have been unnecessary and improper." (Emphasis mine.)

On appeal from a judgment for plaintiff in a wrongful death action wherein defendant's motions for a directed verdict and for a new trial were denied, this Court will review the evidence in the light most favorable to the plaintiff; and in doing so this Court must apply the rule that it is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances with which an employee is to work; and the question as to whether the master's failure to remove the cab from the motor patrol while it was being used in construction work constituted negligence involving breach of a duty on the part of the master to his servant, and whether such negligence was the proximate cause of the servant's injury, or death, are questions of fact for the jury and if there is any evidence reasonably tending to prove the same, a verdict for plaintiff and judgment based thereon will be sustained on appeal. Marrs v. Richardson, 184 Okl. 342, 87 P.2d 131; Humble Oil & Refining Co. v. Hendrix, 8 Cir., 2 F.2d 33.

Under the above rule of positive duty of the master to use reasonable care in providing safe machinery with which an employee is to work, the evidence, the essence of which I have already outlined above, was ample to sustain the jury's finding the defendant (master) guilty of negligence in failing to remove the cab from the motor patrol while it was being used in construction work, and that such negligence was the proximate cause of the wrongful death of the plaintiff's husband, the defendant's (master's) servant and I respectfully dissent.