Hillsborough
No. 88-405

THERESA BROWN

v.

PHILIP BONNIN

December 13, 1989

*Craig & Wenners P.A.*, of Manchester (*Gary L. Casinghino* and *Maureen Dunnigan* on the brief, and *Mr. Casinghino* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Portsmouth (*Suzanne E. Groff* and *John B. Kenison, Jr.*, on the brief, and *Ms. Groff* orally), for the defendant.

JOHNSON, J. This is an action to recover for injuries sustained by plaintiff when she fell while descending defendant's stairs. The case was tried before a jury in Superior Court (*Pappagianis*, J.) for three days in September, 1988. The jury returned a verdict for

defendant, and the plaintiff appeals. She objects to the following two evidentiary rulings made by the trial court. First, the jury was instructed not to consider evidence regarding the dimensions or measurements of the risers, treads, nosings, and handrail of defendant's stairs in reaching a verdict. Second, plaintiff's expert witness was not allowed to testify concerning the application of the Manchester Building Code's current handrail requirement to defendant's stairs, which were constructed prior to adoption of the current code. We affirm.

Plaintiff, a fifty-four-year-old woman, lives on the third floor of defendant's apartment building in Manchester. She normally uses the front exterior stairs, where she fell, only to collect her mail, whereas she enters and leaves her apartment through the back door. At the time of her fall, she had lived in the building for twenty years, and the portion of the stairs from which she fell was ten to thirteen years old. Until her fall, she had never complained to defendant about the front stairs or the fact that it had only a single handrail.

Plaintiff fell on a clear August day as she was descending the left side of the stairs where no handrail existed. She testified that she slipped on the second step down: "There was something on it. I slipped and fell." She described that "something" in her writ as a "gluey substance." Her neighbor, Richard Mann, came to her aid immediately after the fall and testified, "[W]hen I first approached her, she was commenting on the shoes . . . . She complained to me about her shoe. She said, my shoe, my shoe, these darn shoes." Plaintiff was wearing relatively new patent-leather shoes. When defendant's counsel showed her pictures of a pair of shoes and asked if those were the ones she wore when she fell, she replied, "Yes, unfortunately."

In descending order, defendant's front stairs consist of four wooden steps, one concrete step, and one granite step. While the wooden steps differ from the other two in measurement, they are themselves alike. Plaintiff's expert witness, Gary Meehan, a Manchester architect, testified that defendant's stairs were unsafe and did not conform to the current Manchester Building Code with respect to the stairs' risers, nosings, and handrails. A summary of his testimony follows:

1. The vertical portions of the steps, or the "risers," measure eight inches each, where the current building code recommended a height of seven and three-quarters inches. Meehan testified that his office normally recommended a

height of only six inches in order to avoid the hazards of rain, ice, and snow.

2. The portion of the stair that overhangs the riser is called the "nosing." While the current building code called for one inch nosings, defendant's four wooden steps have three-quarter inch nosings and his concrete and cement steps have none. When asked to explain the importance of a nosing, Meehan testified: "the nosing is what allows a person to get their foot out away from the riser so that they hit the stair below cleanly rather than scraping the back of the[ir] foot on the riser."

3. The "treads" of a staircase are the actual steps. There was no testimony regarding the building code require-ments concerning tread width, but Meehan pointed out that defendant's bottom step is four inches wider than the other steps.

4. Meehan testified that the existing handrail did not conform to the current building code in that it did not extend to the bottom, granite step and that it was not of a uniform height from the steps.

5. Defendant's stairs have only one handrail, located on the right-hand side as one descends the stairs. Meehan testified that the current building code required two handrails and that the stairs were unsafe with only one. He further testified that a left-hand handrail "may have been able to break [plaintiff's] fall."

The trial judge instructed the jury to disregard all testimony and evidence concerning the measurements of the risers, nosings, treads, and *existing* handrail on the right side of the steps. Plaintiff objected to the instruction, but was overruled.

Plaintiff also sought to have her expert testify concerning the application of the building code to defendant's stairs. The trial court sustained defendant's objection to the testimony on the ground of hearsay. In an offer of proof, plaintiff's counsel stated that Meehan would have testified that the current building code required two handrails on an exterior staircase the size of defendant's, *regardless* of the date of the building's construction. Defendant's counsel argued that Meehan's testimony would be based solely on a conversation with a Manchester building official. The trial judge agreed that Meehan's testimony would be simply a recital of the official's opinion and that therefore the testimony would be inadmissible hearsay.

■ Plaintiff argues in her appeal that: (1) Meehan's testimony concerning the risers, nosings, treads, and existing handrail relates to the cause of plaintiff's fall and injuries and therefore should have been admissible; and (2) Meehan's proposed testimony concerning the application of the building code handrail requirements to defendant's stairs should have been admitted as proper expert opinion testimony. Plaintiff raised a third issue in her notice of appeal, but did not argue it in her brief. We will not discuss this issue here, since "issues raised in the notice of appeal but not briefed are deemed waived." *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983) (citing *Fleming v. Martin*, 122 N.H. 128, 130, 442 A.2d 584, 585 (1982)).

■ The review standard in this case is the abuse of discretion standard. "The admissibility of evidence is generally within the discretion of the trial court," *State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982), and we will uphold its rulings "unless there is a clear abuse of discretion," *Peters v. McNally*, 123 N.H. 438, 440, 462 A.2d 119, 121 (1983) (citations omitted). We find no abuse of discretion as to either issue and therefore affirm.

## I. *Relevancy*

■ The trial judge did not abuse his discretion in instructing the jury to disregard evidence concerning the measurements of the risers, nosings, treads, and existing handrail of defendant's stairs. It was within his discretion to determine that the evidence was inadmissible because it was either irrelevant, under New Hampshire Rule of Evidence 401, or likely to mislead and confuse the jury, under Rule 403.

Rule 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The critical question for the jury was whether defendant's alleged negligence caused plaintiff's injuries. Plaintiff's attorney admitted in his opening statement that "there was a slippery substance on the staircase and that caused her fall. . . ." Plaintiff's testimony amply substantiated her attorney's statement. From the evidence presented, it is highly improbable that the stairs' risers, nosings, treads, or existing handrail had any causal connection with plaintiff's injuries. Plaintiff made no reference to riser height in describing her fall, and plaintiff's expert witness, Mr. Meehan, testified only that an excessively high riser could be unsafe due to rain, ice, and snow. Plaintiff fell on a clear summer day. Similarly, plaintiff offered no

testimony that her slip and fall was related to substandard nosings. Mr. Meehan explained that a nosing prevents a person from scraping the back of a foot against a riser. Plaintiff fell because she slipped on something. With regard to tread width, Mr. Meehan testified that variations from step to step could pose safety hazards. He pointed out that the bottom step's tread width was four inches greater than those of the other steps. However, the other steps' tread widths were identical. Plaintiff fell from the second step from the top on the left side of the stairway. Finally, neither plaintiff nor her expert suggested that the *existing* handrail on the right side of the stairway was in any way related to plaintiff's injuries. When plaintiff's attorney asked Mr. Meehan "whether or not the configuration of the stairs played any role in the injuries received by Mrs. Brown," he replied, "Yes. I feel that the presence of a handrail on the left side may have been able to break that fall." This evidence was properly sent to the jury. Although plaintiff's attorney attempted to elicit an opinion from Mr. Meehan that the stairs' risers, nosings, treads, and existing handrail were causally related to plaintiff's injuries, the expert failed to express such an opinion.

Rule 403 states: "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury . . . ." It is conceivable that, under our State's liberal definition of relevance, the evidence concerning the risers, nosings, treads, and existing handrail was relevant. *See* N.H. R. Ev. 401, Reporter's Notes. If relevant, however, the probative value of the evidence was substantially outweighed by the danger of confusion of the issues or of misleading the jury. The trial judge did not abuse his discretion in instructing the jury to disregard this evidence.

The plaintiff argues that the jury should have been allowed to decide for itself whether the evidence concerning the risers, nosings, treads, and existing handrail was related to her injuries. In support of this argument, plaintiff cites three similar personal injury cases, *Vezina v. Amoskeag Realty Co.*, 110 N.H. 66, 260 A.2d 115 (1969); *Mutterperl v. Lake Spofford Hotel*, 106 N.H. 538, 542–43, 216 A.2d 35, 39 (1965); *Goldstein v. Corporation*, 86 N.H. 402, 403, 169 A. 587, 588–89 (1933). She quotes *Vezina* in her brief: "Lack of direct evidence of the cause of a fall is not fatal to the plaintiff's case if by reasonable inference a jury could find it was caused by the defendant's negligence." *Vezina v. Amoskeag Realty Co.*, *supra* at 68, 260 A.2d at 117 (citation omitted). While plaintiff's reading of the law is accurate, her case is distinguishable from

those cited. Here there *was* direct evidence from the plaintiff herself as to the cause of the fall (plaintiff slipped on a "gluey" substance on the stairs' second step), and by no reasonable inference could a jury find that the injuries were caused by alleged defects in the stairs' risers, nosings, treads, or existing handrail, since she elected to descend the steps without using the existing handrail. "[W]here the evidence discloses no connection between the injury and the alleged cause except a bare possibility that the former resulted from the latter, there is nothing for the jury where it is also possible that the injury may be due to other causes." *Ahern v. Company*, 88 N.H. 287, 291, 188 A. 470, 473 (1936) (citations omitted). "In other words, certain evidence which is superficially relevant, may not be the basis for a finding by the jury and is not fit to be submitted to them." *Hebert v. Railroad*, 90 N.H. 324, 329, 8 A.2d 744, 746 (1939).

II. *Hearsay—Expert Opinion Testimony*

The trial judge did not abuse his discretion in prohibiting plaintiff's expert witness, Mr. Meehan, from testifying concerning the application of the building code's handrail requirement to defendant's stairs. It was within the trial court's discretion to determine that Mr. Meehan's proposed testimony would not have been an expert opinion, but rather a recital of a building code official's opinion, and therefore inadmissible hearsay. The record below supports the trial judge's finding that "the witness didn't form an opinion. He just accepted what he was told. And what he's relying on or what the plaintiff wanted him to relate to this jury is the opinion of the official."

Plaintiff argues that Mr. Meehan's proposed testimony would have been a proper expert opinion and therefore should have been admitted under New Hampshire Rule of Evidence 703. Rule 703 states: "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data [upon which the expert bases an opinion or inference] need not be admissible in evidence." Plaintiff cites several cases in support of her argument that an expert opinion may be based on hearsay. *See, e.g., Wiggin v. Kent McCray Co.*, 109 N.H. 342, 348, 252 A.2d 418, 423 (1969); *Brewster v. State*, 107 N.H. 226, 227, 219 A.2d 706, 708 (1966). We do not dispute this well-established law. What is fatal to the plaintiff's position is that her expert's proposed testimony would not have been an expert opinion, but merely the repetition of a statement made to him by another.

The testimony therefore could not be admitted under the hearsay exception described above.

In *Bill v. Company*, 90 N.H. 453, 456, 10 A.2d 662, 663–64 (1940), this court explained the nature and the purpose of expert opinion: "Expert witnesses are called to give their opinions on subjects about which they have special knowledge and experience, upon the assumption that, by reason of these qualifications, they will be able to assist the jury in its search for the truth." While the expert may rely on hearsay to form an expert opinion, "the basis for [the] conclusion is assumed to lie in his [or her] special knowledge of such matters . . . ." *Id.* An expert witness is allowed to base expert opinion on hearsay only because it is assumed that the witness uses his or her "special knowledge" and expertise to evaluate the hearsay. *See id.* Here the record supports the trial judge's finding that Mr. Meehan did not use his expertise to evaluate the Manchester Building Code official's opinion concerning handrail requirements.

█ Since anyone could have asked for and repeated the official's opinion, Mr. Meehan's proposed testimony would not have been an expert opinion and therefore would have been inadmissible hearsay. As the trial judge stated, "[I]f this [evidence] is so critical to the plaintiff's case, the easy answer is to bring in an official from the city building code department." The trial judge also instructed the plaintiff, "[I]f you have a code provision . . . you would show [it to Mr. Meehan] and then ask him in his opinion what he thought that meant. I'd let it in." Plaintiff declined to exercise these options in order to attempt to show that the current Manchester Building Code applied to the steps in question.

The trial court did not abuse its discretion in making the evidentiary rulings appealed from in this case.

*Affirmed.*

All concurred.